## BRANNIGAN ET AL. v. THE PEOPLE.

[JULY 22, 1869.]

A LEGAL GRAND JURY IS ONE COMPOSED OF TWENTY-FOUR ELIGIBLE MEN.

MURDER IN THE FIRST AND SECOND DEGREE ARE NOT TWO DISTINCT OFFENSES; but a common-law indictment is insufficient to charge the offense of murder in the first degree; all the elements entering into murder in the first degree should be alleged; but an indictment in charging the offense need not follow the language of the statute if other equivalent words are used; therefore an indictment charging that the offense of murder was committed "feloniously, deliberately, willfully, and of malice aforethought," omitting the word of the statute "premeditated," charges murder in the first degree.

A DEFENDANT IN A CRIMINAL CASE MAY OF RIGHT INTERPOSE A PLEA IN ABATEMENT after demurrer entered and withdrawn.

ON A TRIAL FOR MURDER, EVIDENCE THAT THE DEFENDANTS WERE AUTHORIZED BY THE UNITED STATES MARSHAL TO ARREST the deceased, coupled with an offer to show that the killing took place in an attempt to arrest deceased, who resisted, is admissible; for, whether the United States marshal could confer such authority on a person other than a legally constituted deputy, the evidence was admissible as tending to show the motive and intent of the defendants, and thus reducing the grade of the offense.

IN A MURDER CASE, IT IS ERROR FOR THE COURT TO FAIL TO CHARGE THE JURY AS TO THE OFFENSE OF MURDER and its degrees, and as to the offense of manslaughter, and in failing to state the punishments for the various grades of homicide. The fact that counsel have read to the jury in the course of their arguments the statutes on these subjects does not cure the omission.

APPEAL from the third district court. The opinion states the facts.

*R. N. Baskin,* for the appellants.

*Zerubbabel Snow,* for the respondents.

HAWLEY, J.:

Upon inspection of the record in this case, we find it to be incomplete in many respects, and fails to present in most of its formal and in some material particulars what a record should, in order that the facts and the proceedings it assumes to present may be understood. This has arisen in part from the careless and incomplete manner in which the same was kept in the court below; and also in transcribing the same.

It is true, the judge is charged with the supervision of all the proceedings of record; but the practice of leaving all the details of the entries to the clerk has been universal. The transcript is wholly the work and responsibility of the clerk below; and we regret the necessity of stating that the transcript in this case could hardly be more faulty. It is hoped that in future there will be no occasion for remarks of this nature.

It is a familiar rule of law that statutes that operate beneficially upon those whom they immediately concern, are to be construed liberally. But enactments of the opposite character—taking away rights, or working forfeitures, or creating hardships of any kind—are to be construed strictly. The law delights in the life, liberty, and happiness of its subjects, and deems statutes which deprive any one of them of these in a sense odious, and therefore all penal statutes must be construed strictly. And the degree of strictness will depend somewhat on the severity of the punishment they inflict. Such statutes are to reach no further in their meaning than their words. No person is to be made subject to them by implication; and all doubts concerning their interpretation are to preponderate in favor of the accused. Bearing these principles and rules in mind, we will proceed to the examination of the record under review in this case: See 1 Bishop's Crim. Law, sec. 223–225.

All indictments must be found and presented by a lawful grand jury. Chapter 35, section 5 of the statute provides that the marshal shall summon for a " grand jury " for the district court " twenty-four eligible men to serve as grand jurors;" and it further provides that " said twenty-four men shall constitute a grand jury."

1. The record of this case discloses the fact that there were only seventeen grand jurymen impaneled, who found the indictment and made the presentment against the plaintiffs in error.

The intention of the legislature is too clearly expressed in the statute to be misunderstood. It requires in express terms that "twenty-four eligible men shall constitute a grand jury." Can the number under this statute be less than twenty-four ? It is claimed on the part of the people, that

inasmuch as the common law was in force at the time of the adoption of the first amendment of the constitution of the United States, which by article 5 provides that "no person shall be held to answer for a capital or otherwise infamous crime, unless on a presentment or indictment of a grand jury;" and that, inasmuch as the number constituting a grand jury at that time by the common law was fixed to be a number not less than twelve nor more than twenty-three, thereby the lawful number became the common-law number by constitutional provision, and must so remain though legislation otherwise provides. If this were so, then the common-law number could not be changed by statute of congress or that of a state. If such is the fact, then all our legislatures, from that of the national government to the territorial, as well as all our judges, have misconceived this constitutional provision, and have disregarded it; for the common law has been otherwise in various ways invaded than in the matter of the grand jury.

It is unquestionably true, that in the absence of a statute providing for a different number, the common law would control the number. It must, however, be remembered that the constitution of the United States does not adopt the common law as a part of itself. If it did, the number of a grand jury would be thereby prescribed by that of the common law. The common law at the time of the adoption of the constitution must be regarded as in place of a statute under the constitution. Congress and the several states, and also the territories under congress, have the right to provide by statute a different number. If a different rule prevailed, it would put at end all legislation, and we should in almost every particular be under the common law, instead of the vast statutory provisions that now encumber our national and state legislative records. In Louisiana the number of the grand jury must not exceed sixteen; in California it must not be less than seventeen; in Arkansas it must not be less than sixteen; in Iowa it is fixed at ten: See 1 Bishop's Crim. Proc., sec. 725, and notes. That congress and the state have the right to supersede the common-law rule, and provide a new rule by which a greater if not a less number than that of the common law may be provided, there can not be a question.

By the organic act of the territory of Utah, section 6, the legislature of the territory has jurisdiction of "all rightful subjects of legislation consistent with the constitution of the United States and the provisions of the organic act.  *  *  *  And the laws passed by the legislative assembly and governor shall be submitted to the congress of the United States, and if disapproved shall be null and of no effect." The statute fixing the number of a grand jury at twenty-four was approved January 21, 1859, and was never disapproved by congress; and by the operation of law and of the organic act of this territory, it became a law. If the statute fixed the number less than twelve, instead of less than twenty-three, there would exist a stronger reason for questioning its validity, for thereby individual liberty and life would be placed in greater peril than by the common law; but in fixing the number at twenty-four, individual liberty and life are more strongly guarded, and thereby the intent and spirit of the constitutional safeguard are respected and upheld, instead of being weakened.

But it is said that while it is the duty of the marshal to summon twenty-four grand jurors, not more than twenty-three can be impaneled, as otherwise a complete jury of twelve might dissent, and therefore the finding would be void. To support this position, 1 Wharton's Crim. Law, sec. 465, and the notes thereto, is cited. On examination of these authorities, we find that they all rest upon the statute of their several states; and while they would be controlling there, yet they would not be in a state or territory where a different statute was provided. Section 11 of chapter 35 of the statutes of this territory provides that "when the grand jury or any twelve of them have, upon to them good and sufficient evidence, found a bill of indictment, indorse thereon the words, to wit, 'A true bill,' and their foreman officially signs his name to said indorsement, and also note or cause to be noted on the bill of indictment the name or names of the witnesses upon whose evidence it was found," is a lawful indictment. This provision effectually disposes of the difficulty named in the objection last stated. We must, therefore, hold, in the language of the statute, that a legal grand jury in this territory to be "twenty-four eligible men, and that said twenty-

four men shall constitute a grand jury;" and that said "grand jury, or any twelve of them," may find and present an indictment under the laws of this territory against those who may violate the same.

It also appears from the record in the bill of exceptions and the transcript of proceedings that six of the said grand jury that found the said indictment were taken from the by-standers as talesmen, and were not summoned by writ of *venire* as required even by the common law, and in direct and open violation of the statute of this territory. Chapter 35, sections 8, 9, prescribes a specific mode of selecting by writ of *venire*, both the grand and petit jurors; and also prescribes a specific mode of return to be made of said writ to the court, to wit: "Said officer shall return said list or lists and writ to said district court at the time specified, and shall specify the persons summoned and the manner in which such was summoned." It does not appear from the record, by the return of the marshal to said grand jury writ, that any of the said provisions of the statute were complied with; nor does it appear from his return that he had lawfully selected and summoned the said grand jurors who found and presented the said indictment. But it does appear from the record that one and all of these provisions were wholly omitted and disregarded. It may be said that it is too late after verdict to look into the record. This is true as to matters of mere form of regularity; but not so when it appears upon the face of the record, as in this case, that the indictment by which the prisoners were charged and tried for their lives was found by an unlawful grand jury.

2. It is further claimed and assigned by the plaintiffs in error that the indictment charges murder only in the second degree, and that the verdict is, guilty of murder in the first degree.

The statute, on page 51, chapter 22, provides as follows:

"Sec. 4. Whoever kills any human being with malice aforethought, either expressed or implied, is guilty of murder.

"Sec. 5. All murder which is perpetrated by means of poison, or lying in wait, or any other kind of willful, deliberate, and premeditated killing, or which is committed in the perpetration or attempt to perpetrate any arson, rape, robbery, may-

hem, or burglary, is murder in the first degree, and shall be punished with death.

"Sec. 6. Whoever commits murder otherwise than is set forth in the preceding section is guilty of murder in the second degree, and shall be punished by imprisonment for life, or for a term not less than ten years.

"Sec. 7. Upon the trial of an indictment for murder, the jury, if they find the defendant guilty, must inquire, and in their verdict declare, whether he be guilty of murder in the first or second degree. But if such defendant be convicted upon his own confession in open court, the court must proceed, by the examination of witnesses, to determine the degree of murder, and award sentence accordingly."

The indictment charges that the killing of Russell was by the plaintiffs in error, and that they committed the crime "feloniously, deliberately, willfully, and of their malice aforethought."

If it is necessary to sustain a verdict of murder in the first degree, to charge in the indictment what is declared by statute to be murder in the first degree, it can not be contended that the identical words of the statute must be used, providing the charge is made in language equivalent to that named or specified by the statute. The word "premeditated" is left out of the averment in the indictment, and in its proper place are substituted the words "and with malice aforethought."

While these words in their meaning must be construed strictly, yet they must not be so cramped as to deprive them of their true meaning and effect. They must be taken to convey such meaning as our language and the courts give to them. Webster says: "To premeditate is to think, consider, resolve in the mind beforehand; to have formed in the mind by previous thought or meditation; previously contrived, designed, or intended; deliberate; willful." That is, "premeditated" includes within its meaning meditation and deliberation.

He says that "aforethought is premeditated; prepense; as malice aforethought." That is, aforethought includes premeditated; malice aforethought is malice premeditated; and that malice premeditated is malice aforethought. He uses them interchangeably.

Bouvier says "premeditation" is "a design formed to commit a crime, or to do some other thing before it is done. A deliberation and a continual persistence which indicates more perversity than will." That is, premeditation is more than will, and includes deliberation. He says: "Aforethought. is premeditated, prepense; that is, aforethought includes premeditation." Both of these standard authors give substantially the same or equal force and effect to the meaning of the word "aforethought" that they do to the word "premeditated."

While there may possibly be found a shade of meaning as between those two words, differing one from the other, there is not found such a substantial legal difference as to be, in our judgment, reason to disturb for that cause the judgment of a court in even a criminal proceeding where the penalty is death. Murder in the first and second degree is not two offenses, and therefore, under our statute, the indictment should include proper averments to charge murder in the first degree; at least, this seems to be the better practice, although the case cited in 34 Cal. 217, and that in 27 Id. 507, seem to have established a different rule, or at least have given a greater liberty in drawing indictments; but not having these two authorities before us, we can not determine the law as laid down by them, but our position is fully sustained by 2 Bishop's Crim. Proc., secs. 572, 573, 574.

3. The plaintiffs in error further claim by their assignment in error that they had a right to plead in abatement after their withdrawal of their demurrer by leave of the court.

It is also said and insisted, on the other hand, that the plea in abatement did not come in apt time, and therefore that it could be pleaded only by leave of the court, and that the court in its discretion had a right to reject it.

In civil proceedings we recognize the right of the court to exercise its discretion in admitting a dilatory plea after demurrer or after a plea in bar has been filed. But in a capital case the rule is different. By a plea in abatement, the question may be tried whether or not the grand jury finding the indictment, or any member thereof, was ineligible, or that there were too many members or too few, or that it was otherwise incompetent, or that there was a departure from the statute

in selecting or in summoning and impaneling of the grand jury. When the grand jury is about to be selected, impaneled, and sworn, the accused may be wholly ignorant of the fact, or in actual confinement, and has not the physical capacity to make challenges; he is never brought up and confronted with the grand jurors, nor is he served with a list of the persons who are to compose the grand jurors. Chief Justice Hopkins, in the case of the *State* v. *Williams*, 5 Port. 130, said: "Where men are without authority, no person is bound to appear and except to their want of authority." See 1 Bishop's Crim. Proc., secs. 748, 749, and notes, and secs. 721, 722; 1 Wharton's Crim. L. 526½; Gould's Pl., sec. 43, and note 6. The plea in abatement in this case avers "that the persons purporting to act as a grand jury, by whom said indictment was found and returned, consisted of the number of seventeen only, and not of twenty-four as required by law; that said seventeen persons acting as a grand jury, by whom said indictment was found, were not summoned as required by statute in such cases made and provided, nor was any one of them drawn from the list of names made by the county court in pursuance of the statute in such cases made and provided; that the officer, to wit, the territorial marshal, to whom the *venires* issued by the clerk of the court for a grand and petit jury to serve at the term of said court at which said indictment was found and returned, was delivered and directed, did not, nor did any one for him, proceed to the clerk of the county court of Salt Lake county, or any other county in Utah territory, and in connection with him, the said clerk of said court, or any one else, draw said jury, nor the persons aforesaid, by whom the said indictment was found, nor any of them, from the box containing the aforesaid list of names selected as aforesaid by the county court, as by law it was required to be done; but that, on the contrary, said marshal, by his deputy, served and returned twenty-four persons to serve as grand jurors, who were not drawn from the list aforesaid, in the box aforesaid, in the manner aforesaid, among whom were eleven of the seventeen persons aforesaid, the remaining six having been taken as talesmen from the by-standers; wherefore they pray judgment of said indictment, and that by the court here the same may be dismissed and quashed;" which

said plea was sworn to by all the defendants to the said indictment, and filed May 18, 1869.

By reference to the thirty-fifth chapter of our statute, it appears that the law required to be done what this plea in abatement alleges was not done. The record (on page 28) shows that when this plea was tendered "the court held that it not being filed in apt time, it could not be filed or entertained," whereupon exception was taken thereto. The motion in arrest of judgment assigns as one of the reasons therefor the disallowance of said plea in abatement by the court; and also shows that the court required the plaintiffs in error to either plead guilty or not guilty. It is true that this plea, and the rulings of the court below and the exceptions thereto as aforesaid, are not embraced in the bill of exceptions, but they are all found in the record; and the said plea in abatement is as much a part of the record as the indictment, the same being with the indictment attached to the record and filed in this court as a part of the same. After verdict, objection for the first time to the manner of drawing or selecting the grand jury, if it had been a lawful one, and had the return of the marshal indorsed upon the *venire* showed that the grand jury had been lawfully selected and summoned, could not have been raised; but all these questions were raised by the said plea in abatement, and in apt time. In capital cases a court of review will look into the records, when upon their face it appears that material errors have been committed and injustice done, even though the bill of exceptions does not formally incorporate them. The office of a demurrer, in a capital case especially, is not properly a plea; it is for the only purpose to test the quality of the indictment, and to ascertain if there is a case presented in law the defendants are bound to further answer: See Gould's Pl., sec. 43. But the withdrawal of the demurrer by leave of the court swept the record clear, and left the plaintiffs in error at liberty to interpose any plea known to the law other than that of guilty or not guilty.

4. The plaintiffs in error further assign as ground of error that they offered to show by witness Josiah Hosmer (the United States marshal), that they (the prisoners) "were at the time of said homicide authorized by him, as United States

marshal of Utah territory, to rearrest the said Calvin T. Russell. Said testimony," the record states, "was not offered as to jurisdiction, but as reflecting on the question of malice, and as a foundation for the testimony of other witnesses, by whom they expected to prove that the defendants, at the time of said homicide, were attempting to arrest the said Calvin T. Russell, who resisted said arrest, and was trying to escape when killed;" and that the court refused to allow them so to do, on the ground that said United States marshal " had no right to give such authority except to a legally qualified deputy." There can not be a question but that this offer should have been allowed, for any evidence even tending to show that the plaintiffs in error did not kill Russell "willfully, deliberately, and with malice aforethought," or by which their punishment might have been reduced to that of murder in the second degree, or to that of manslaughter, was material and proper to go to the jury. It is urged on the part of the people that inasmuch as no question was actually put to the witness, there was no exclusion of any evidence. We fail to comprehend any difference in effect between the ruling out of a proper question and the refusal to allow proper proof to be made.

5. They further assign that the court erred in the instructions given to the petit jury, in this: 1. Because said instructions did not cover all the questions of law in the case; and 2. Because they were calculated to mislead the jury.

Chapter 30, section 12 of the statute, on page 65, provides that " the court shall instruct the jury on the law and equity in the case, and give them such other instructions as may be necessary."

Chapter 22, on page 51, provides as follows:

" Sec. 4. Whoever kills any human being with malice aforethought, either expressed or implied, is guilty of murder.

" Sec. 5. All murder which is perpetrated by means of poison or lying in wait, or any other kind of willful, deliberate, and premeditate killing, or which is committed in the perpetration, or attempt to perpetrate, any arson, rape, robbery, mayhem, or burglary, is murder of the first degree, and shall be punished with death.

" Sec. 6. Whoever commits murder otherwise than is set forth in the preceding section is guilty of murder in the second degree, and shall be punished by imprisonment for life, or for a term of years not less than ten years.

" Sec. 7. Upon the trial of an indictment the jury, if they find the defendant guilty, must inquire, and in their verdict declare, whether he be guilty of murder in the first or second degree.

" Sec. 11. Any person guilty of manslaughter shall be punished by imprisonment not more than ten years nor less than one year, and by fine not more than one thousand nor less than five hundred dollars."

The instructions given by the court were as follows :

" If the jury believe from the evidence, beyond a reasonable doubt, that all the defendants acted in concert and took part in shooting at said Russell, and if you further find from the evidence, beyond a reasonable doubt, said Russell was murdered as charged in the indictment, all of the defendants are equally guilty, although only one of them discharged the ball which killed said Russell; but if you have a well-founded reasonable doubt as to whether either one of the defendants took part in such shooting and acted in concert with the others, you will acquit such defendant. The form of your verdict will be, guilty or not guilty. If guilty, you will find whether in the first or second degree, or manslaughter, and you will determine whether all or any one of the defendants are guilty as above instructed, and the degree of each of the defendant's guilt."

These instructions, being all that were given, fail to give the whole law of the case, or to state what murder is; and fail to define and to state to the jury the different degrees of murder, or to state what the penalty is under each degree. They also fail to state to the jury what manslaughter is, or what the penalty is therefor. No rule of law under the evidence was given to the jury by which they could arrive at an intelligent understanding of the law controlling the evidence, and as a matter of course they were not prepared to bring in a proper or lawful verdict, in the absence of full instructions from the court, upon the law and equity of the case. See 3 Kan. 481.

The people insist that because counsel for the people and for the defendants in their arguments read and discussed the law to the jury, therefore the jury were fully instructed, etc. The record shows as follows, to wit: "That on the trial of said case, the counsel for the people and the counsel for the defendants having, in their arguments of the case, read and discussed the law to the jury," etc. It is a sufficient answer to say that, in this territory, the jury must receive the law from the court, and not from the counsel in the case.

6. The record on page.30 certifies the verdict of the jury as returned by the jury, and recorded to be in the following words:

"We, the jury, find the prisoner guilty of murder in the first degree, as charged in the indictment.

"MANLY BARROWS, Foreman."

On page 31 of the record the verdict is recited by the clerk in the following words:

"We, the jurors, find the prisoners guilty of murder in the first degree, as charged in the indictment.

"MANLY BARROWS, Foreman."

If the first form of the verdict of the jury above given is the true verdict, as it is certified to be, then certainly it is void for uncertainty; for it could not be known from it which of the three prisoners was so found guilty. But counsel insist that the second form above given, which only purports to be a recital of the first form given, corrects the error. We can not see how the original verdict can be corrected by a mere copy made from it. Can we presume, as against the three prisoners condemned to be shot to death, that the last form, which is only a recital from the first and original certified form, is the correct form and precise wording of the verdict, and that the first form above certified is a clerical error, and that too in opposition to the record itself, and the certificate of the clerk? No verdict so defective and fatal in form and in substance can be corrected or changed by presumptions against the prisoners in a capital case or that of any other. If there were no other errors than this in the record, we should, upon proper showing, send the record back

and order a new and complete one to be made, so that if it was a clerical error it might be corrected, though such a resort in a case like this might be deemed censurable. When a jury brings in a defective and void verdict, it is in the power of the prisoner or prisoners, as well as that of the people or prosecutor, at the time of its rendition, in the presence of the jury, to have it set right. If the prisoner or prisoners in such case choose not to interfere, and suffer a defective verdict to be entered by failing to interpose, objection is thereby waived to being put a second time in jeopardy for the same offense. In such cases, the verdict is simply set aside as a nullity, and a new trial is ordered. The court can not make the verdict what it should be. See 1 Bishop's Crim. Proc., sec. 842; 1 Bishop's Crim. L., sec. 844–850. But the general effect of an uncertain verdict is fatal to it. See 1 Archibald's Crim. Prac. 666, note *a;* also 3 Graham and Waterman on New Trials, 1378, and cases there cited.

From the views above expressed, it follows that the judgment in the case under review must be reversed and annulled, and remanded to the court below for a new trial, and for further and other proceedings according to law.

STRICKLAND, J.:

I fully concur in the above opinion of Associate Justice C. M. Hawley upon all the points discussed by him in the foregoing-entitled case.