[No. 466, Consolidated with Nos. 467, 468, 469. July 26, 1892.]

TERRITORY OF NEW MEXICO, APPELLANT, v.
LUCIANO BACA, APPELLEE.

CRIMINAL LAW—GRAND JURY—VALIDITY OF ACT OF FEBRUARY 26, 1889—
SPECIAL LEGISLATION.—Held: The act of February 26, 1889 (Session
Laws, 1889, p. 227), providing for the summoning and impaneling of
grand juries, in so far as it attempts to regulate the trial of offenses
against the territory, by enacting that the jury drawn from the sev-
eral counties composing the judicial districts shall alone have author-
ity to make presentments of all crimes committed against the territory
in the county in which the court is held, and requiring the votes of
twelve grand jurors to find an indictment in Santa Fe county, and of
only nine grand jurors to find an indictment for the same offense in
other counties composing the judicial district, is in plain contraven-
tion of the act of congress, approved July 30, 1886, providing that no
local or special law shall be enacted by the legislature of any terri-
tory for summoning and impaneling grand or petit juries, and void to
that extent.

APPEAL, from a judgment in favor of defendant, from the First Judicial District Court, Santa Fe County.   Judgment affirmed.

The facts are stated in the opinion of the court.

EDWARD L. BARTLETT, solicitor general, for the territory.

H. L. WALDO, NEILL B. FIELD, and THOS. SMITH for appellee.

FREEMAN, J.—These causes involve the same questions, and for convenience of argument have been consolidated.   These are appeals from the judgment of the district court of the county of Santa Fe, sustaining pleas in abatement to indictment found against the defendants in the above numbered causes.   The cases presented involve the validity of the act of the legislature which became a law by limitation on February 26, 1889.   The act in question provides substantially that, in counties of the territory wherein courts are held for the trial of causes arising under the laws of the United States,—that is to say, in the counties of Santa Fe, San Miguel, Bernalillo, and Dona Ana, the number of grand jurors shall be twenty-one, any twelve of whom may find an indictment, and that in all the other counties the number of grand jurors shall be twelve, any nine of whom may find an indictment. We held at the last term of this court, in the case of U. S. v. DeAmador, 6 N. M. 173, that, so far as it relates to trials of causes arising under the laws of the United States, the statute is not in contravention of · the constitution of the United States, nor of any act of congress.   The jury as to these courts, and as to this class of cases, is a good common law jury, and the several counties composing the district over which the

GRAND jury: validity of Act February 26, 1889: special legislation.

jurisdiction of the court extends constitute the vicinage. So far, however, as the act attempts to regulate the trial of offenses against the territory, a different rule applies. It enacts that the jury drawn from the several counties composing the judicial districts, which, for the sake of distinction, we shall call the "federal" jury, shall alone have authority to make presentments of all crimes committed against the territory in the county in which the court is held. It follows that under the provisions of this statute a citizen of the county in which the federal court is held may be indicted by the vote of twelve men, neither of whom may be a citizen of the county wherein the offense is alleged to have been committed. And again, under this statute, it requires the vote of twelve grand jurors to find an indictment in Santa Fe county, and of only nine to find an indictment for the same offense in other counties composing the judicial district. This, we think, is clearly in contravention of the act of congress of July 30, 1886, which provides that no local or special law shall be enacted by the legislature of any territory for summoning or impaneling grand or petit jurors. 24 U. S. Stat., p. 170. It is, therefore, the judgment of the court that the judgment of the district court be affirmed, and it is so ordered. O'BRIEN, C. J., and McFIE and LEE, JJ., concur.

### OPINION OF TRIAL JUDGE.

SEEDS, J.—Believing that the importance of this case requires a fuller presentation of the facts and questions involved than have been given it in the opinion of the court, I take advantage of the law permitting the trial judge to give his views upon the case, to file my opinion as delivered in the district court. The defendant in this case was indicted for murder on the———day of———1890, by a grand jury impaneled in the county of Santa Fe in accordance with the require-

ments of section 4, chapter 96, of the Laws of the Twenty-eighth Assembly of this territory. By sections 4 and 5 of that law, it is provided that "in the several counties of this territory where courts are held for the trial of causes arising under the laws of the United States, that is to say, in the counties of Santa Fe, San Miguel, Bernalillo, and Dona Ana," the number of grand jurors shall be twenty-one, any twelve of whom may find an indictment; while in the other counties of the territory, "excepting the counties of Santa Fe, San Miguel, Bernalillo, and Dona Ana," the number of grand jurors shall be twelve, any nine of whom may find an indictment. Further, by the provisions of said law, the grand jurors who serve in the territorial courts and find indictments for infractions of the laws of the territory in the four counties of Santa Fe, San Miguel, Bernalillo, and Dona Ana, are drawn, not from the body of those respective counties, but from the whole district, comprised of two or more counties, over which the United States district court has jurisdiction solely for the trial of infractions of United States law; while in all other counties of the territory the grand juries are drawn from the body of their respective counties. In fact, by the express terms of section 4 of this law, the same grand jury in each of the four counties above specifically mentioned act in a dual capacity—as a territorial grand jury for the district court of the respective counties, and as a United States grand jury for the respective district of which the county may be the head. To this indictment so found the defendant interposed pleas, alleging in substance the illegality of the grand jury so summoned and impaneled. The territory filed replications to the pleas, alleging the legality of said jury. The replication is in the nature of a demurrer.

The positions taken by the defendant are two: First. That the constitution of the United States, the

organic act of this territory, and the law of congress governing territories, constitute the constitutional authority of the territory; and that by the United States constitution (amendment 5), which says that "no person shall be held to answer for a capital or otherwise infamous crime unless on a presentment or indictment of a grand jury," is meant a common law grand jury, which contemplates a body of men legally drawn from the county or vicinage wherein the crime was committed; in other words, such a grand jury as was known to the law when the constitution was adopted. Second. That by the law of July 30, 1886, passed by the United States congress, there was a specific prohibition upon the territorial legislature against passing local or special laws for summoning or impaneling jurors; and that the law under which the grand jury was drawn which found the indictment in question was illegal under either of these positions. Upon the other hand, the territory contends that the constitutional requirements are met, if there is an impartial grand jury, legally drawn; and that it is discretionary with the legislature as to the number of persons it will place upon the grand jury, and as to the area of territory from which they may be drawn; and that the law in question has made a proper classification of the counties, and the terms used are general as to the classes, and hence, under well known legal principles, the law is general, and not local or special.

That the question here raised, as to the legality of the territorial jury system, is momentous and of great importance, is evident. Upon the one hand is to be considered the possibility that citizens are being indicted, tried, and possibly being found guilty by juries which may be wholly illegal; rights being jeopardized by an institution which has only the semblance of constitutional authority; and those privileges, which are of such inestimable value that courts and legislatures

for centuries have struggled with jealous care, by refinements which at times would seem to partake of scholastic subtlety, to protect it from insidious overthrow, may be each day threatened by the appearance of a legal institution which in fact is without the sanction of law.   Upon the other hand, to set the law in question aside as illegal may allow of the escape of some criminals who ought to be punished, render nugatory and useless much work that has been done, and make useless the expenditure of large sums of money.  Yet the question ought to be met boldly, and decided upon its merits, unbiased by any feared evil consequences. A wrong principle ought not to be upheld for fear of the temporary ill consequences following its condemnation.  A wrong principle is eternally wrong.  Evil consequences following its abrogation are temporary, and are forgotten in the presence of the beneficence of the true principle.  The law is well settled that a court should not hold an act of the legislature unconstitutional if it has any reasonable ground upon which to base the legality of the measure.  The duty of the court is to use every reasonable intendment to sustain legislation.   In re New York El. R. R. Co.,  70 N. Y. 327.   Upon this principle I shall act considering the questions raised by the pleadings before me.   I shall first consider the proposition of the defendant in regard to the character of a grand jury, and the power over it by a territorial legislature.  As preliminary, the inquiry is, are the constitution of the United States, the organic act of the territory, and the laws of the United States in reference to territories, the constitutional law of the territory?  In other words, do they stand to the territory and its legislature in the same relation as a state constitution does to the state and its legislature?   It seems to me that this question must be answered in the affirmative.   It has been so held generally in Re Attorney General, 2 N. M. 49, cases cited;

and, as to the seventh amendment of the constitution, in Webster v. Reid, 11 How. 460. There can be no doubt but that the fifth amendment to the constitution, which says: "No person shall be held to answer for a capital or otherwise infamous crime, unless on a presentment or indictment by a grand jury,"—is part of the constitutional law of this territory, and any attempt to do away with a grand jury in the territory would be absolutely null and void. In fact, as the territories are but portions of the government of the United States itself, as distinguished from the state governments, I have no doubt but that it would be futile and void for congress to attempt to give them the right to make presentments for crime by informations, as is done in some states, where the grand jury system is abolished, so long as the fifth amendment of the constitution stands, and as to those crimes contemplated in that amendment. The territorial laws, as distinguished from the laws of the United States in the territory, have not the same relation to each other, or rather want of relation, as is found between the laws of the state and of the nation over the same territorial area. In the states it is a matter of two distinct sovereignties. In the territory it is the same sovereign acting by two agents,—the one the United States congress, the other the territorial legislature acting in subordination to the greater agent. A state may change its constitution; a territory can not. A state, by its constitution, can change or abolish a grand jury system; a territory has no such power. A state has its constitutional power within itself; that of a territory is without itself. These general principles are necessary to be enunciated, for many of the cited cases upon this question are predicated upon state legislative action, which has behind it a far different constitutional qualification than that of a territorial legislative action, and hence which explain adjudications which would otherwise seem to be in

point. At the time of the adoption of the constitution of the United States, in the grand jury of common law the number drawn was usually twenty-four though only twenty-three were sworn, and twelve were necessary to find an indictment. It is said, "If there be thirteen or more of the grand inquest, a presentment by less than twelve ought not to be; but if there be twelve assenting, though some of the rest of their number dissent, it is a good presentment." 2 Hale, P. C. 161. From this citation, and other authorities which might be quoted, it is quite evident that, with possibly the exception as to the number necessary to find the indictment, the exact number upon the panel was not definitely fixed. In other words, the number of a grand jury is not an absolute requirement of a common law grand jury. This is borne out by the fact that, while states under constitutional sanction have reduced the number of grand jurors, they have not reduced the number of petit jurors which try common law crimes; that is, the number is an integral part of a common law petit jury; not so of a grand jury. So, if congress should alter the number of grand jurors, or should allow territorial legislature to do so, there would not necessarily be any innovation upon the common law jury. In the case of Reynolds v. U. S., 98 U. S. 154, cited by the territory, the question was as to whether the United States statute (section 808), requiring the common law number on a grand jury, or a territorial statute, requiring fifteen on such jury, should be the jury,—they decide the latter,—but this only goes as to the number; and I can not believe that that court intends its authority in this case to be used as upholding any principle which gives the territorial legislature plenary power to draw together a body of men, with any qualification, from any jurisdiction, and, by labeling it a grand jury, have it perform the most important duty of that body as a legal

grand jury of the territory. However, if that is the intention, it will be shown by its amenability to the rules of reasoning. It will be noticed that, strictly construed, that authority only grants territorial legislatures the power to change the number. That question does not arise in these cases, for this law provides for twenty-one on the panel and twelve to indict, which is a good common law grand jury, if in all other particulars agreeable to law.

The contention here is this: These defendants are being tried for a crime against the territorial laws, committed in the county of Santa Fe, in a territorial court for that county, whose jurisdiction is only in that county, upon the presentment of a grand jury part at least of whom were drawn from other counties, not a part of the county or district of the territorial court. Is such a grand jury such a one as the constitution intended citizens should be indicted by, or should they be drawn from the county or district in which the crime was committed,—that is, from the vicinage? The history of the evolution of the grand jury distinctly shows that it came forth from the same matrix as the petit jury. It branched out from it, or, rather, the original body had two functions, which, in process of time, developed into two distinct bodies, known as the "grand" and "petit" juries. Proff. Jury, sec. 28. While the exact time may not be known when this division of functions became a certainty, it is clear that in the reign of Edward III (1327) it was an established fact. Of course, up to that time it was drawn, as was the petit jury, they being one and the same, from the body of the county, or the vicinage. This was absolutely necessary from the original character of the body,—that of being in part witnesses of the facts as well as triers of them. The question now presents itself, has the character of the place from which they have been drawn

ever been changed; that is, the principle of drawing
from the vicinage. If it has not, but for four hundred
and fifty years in England, up to the time of the adop-
tion of the constitution of the United States, the prin-
ciple of drawing from the county or vicinage has been
held as an unquestioned legal requirement of a grand
jury, it can be reasonably inferred that the people have
considered that as an essential element of the common
law jury. And if, in the changes in habits, customs,
and thoughts, in the different character of our neces-
sities, in the evolution of our legal system for the hun-
dred and more years since the adoption of the consti-
tution in all the states, there has been no innovation
upon that principle, it would seem that it was a pro-
nounced element in a legal grand jury; nay, more,
almost the substance of that body. If there has been
any innovation upon this principle recognized by any
court or law the territory has failed to show it, and I
have, after diligent search, failed to find any. There
has been one instance—in Missouri—where at one time
the constitution gave the legislature authority to make
such a change, but after ten years (in 1875) a new
constitution was adopted, wherein this power was taken
away; and when afterward the legislature attempted
to give the right to a grand jury of one county to find
an indictment against a person in another,—not of the
vicinage,—the supreme court promptly declared the
law void. Ex parte Slater, 72 Mo. 102. The argu-
ment of this instance is simply to the effect that the
people of that sovereignty must have considered the
innovation a dangerous one, and threatening the lib-
erty of the citizens, if, after ten years, they struck it
from their constitution, and took their position upon
the common law grand jury of the county or vicinage.

Now, what are the cases cited by the territory to
justify the legislature of this territory in making a
change in the jury system which has no parallel in

principle in any state or country having the common
law jury system for over five hundred years, except
the case in Missouri, which was done by a constitu-
tional enactment, and which was, with almost pre-
cipitate alacrity, rescinded? With the exception of
the case in 98 U. S., heretofore considered, only two
others have been handed me, viz., Brannigan v. People,
3 Utah, 488, Parker v. People, 4 Layer's Reports
(Colo.), 803. The first case was decided in 1869. The
records show that in that case seventeen grand jurors
found the indictment, while the territorial stat-
utes require twenty-four eligible men. The prisoner
claimed that it should be found by a common law
grand jury, and that twenty-four was not such a jury;
hence the statute was void. The court denied this, and
held that the territory, like a state, "has the right to
supersede the common law rule, and provide a new
rule, by which a greater, if not a less, number than
that of the common law may be provided." This, if
good law, only stated that as to the number it could
be changed. It lays down no general principle giving
the legislature the right to practically wipe out the
common law grand jury. This authority is weakened
as to this point even by two errors: First. Reasoning
from state power to territorial power. This can not
safely be done, especially as in all known cases
changes in the grand jury have been under interpreta-
tions of special constitutional sanction. Second. The
court decided that, as territorial laws had to be sub-
mitted to congress for approval or disapproval, and
this law had been, with others, and not disapproved,
therefore it was valid. This holding has been dis-
tinctly repudiated. In the Colorado case the defend-
ant took the ground that to indict him by a grand jury
of less number than a common law grand jury was not
"due process of law," as used in the fourteenth
amendment to the constitution. This was held not

well taken, upon the authority of 110 U. S. 516, which states that the state of California under its constitution can prosecute felonies by informations; in other words, that a state, in enforcing its own laws, can, if it sees fit, dispense entirely with grand juries. These cases represent the territory's side of this issue. I ask, is there anywhere, even by implication, a decision that any legislature under the immediate control of the constitution of the United States and the laws of congress can set aside the requirements of the common law grand jury as to being drawn from the county or district. Incidentally I wish to remark that "county" and "district" are synonymous terms as to the principle involved. We are dealing entirely with territorial courts, and each court has a definite jurisdiction, and that the county. In the case of Clive v. State, 7 N. W. Rep. (Neb.) 444, the court, in discussing the question of a district, and a grand jury for it, say: "In other words, the trial district and the jury district must be the same." There are no cases that I have been able to find upon the immediate question at issue excepting the Missouri case above, and for the probably good reason that no such law as the one under consideration can be found upon the statute books. The danger in this law is the principle involved in it. If the legislature had the constitutional right to take one grand juror from San Juan county to find indictments against the citizens of Santa Fe county, as a grand juror in a court limited to the county of Santa Fe, it has the right to take all of them. There is no escaping this proposition. It is logically unanswerable. Hence the question presents itself, does that power fall, like the mantle of Elijah, upon the shoulders of Elisha, from the United States constitution upon the territorial legislature. It never has been used previously, if it may. The congress of the United States has never seen fit to use such power that I am

aware of. In reason, then, can we suppose such a power legal? We can only arrive at an answer to this by analogical reasoning. Proffatt, in his work on Jury Trials, at section 44, says: "On account of the responsible and weighty duties devolving upon a grand jury, it has always been the practice to exercise a greater discrimination in its selection than in the case of a petit jury." Why this care? Clearly to protect the right and liberty of the subject. In the case of Swart v. Kimball, 5 N. W. Rep. 635, Judge COOLEY, of Michigan, condemned with righteous indignation a law which allowed an information to be sworn out in one county, and a citizen to be taken into another for trial. He ought by right to be tried in the county in which the crime was committed, and it was an outrage to take him out of it. If the grand jury is of more importance than the petit, is it not an outrage to overturn a custom hoary with age, and draw a jury from counties far distant, and not a part of the vicinage, as this law in fact and principle does? Case after case might be cited where it is the right of the accused to be tried by a jury of the vicinage, unless he take a change of venue, and that even, at first, was denied. What power, then, has been conferred upon the legislature to change the same essential as to a grand jury, when it can not as to a petit? Incidentally, though not in this case, it may be stated that this very law does provide for a petit jury, which overturns all known rules of law, and in substance compels an accused, whether he will or not, to take a change of venue; for it seems to me plain that while venue has reference to territory, it means territory with people. We do not take changes of venue to unsettled counties. The law is to protect against people, not areas. Hence there is no difference in the general principle between taking a man to San Juan to be tried or bringing the people from San Juan to Santa Fe to try him.

I have only heard one serious objection to the line of argument here advanced, and that is that the grand jury is not necessarily of the vicinage or county; because, by the law, crimes committed upon the high seas, or in places in insurrection, or so near boundary lines of counties as to be uncertain, the jurisdiction may be given to the grand juries of counties in which they did not occur. But in my judgment these exceptions prove the rule. They all arise ex necessitate,— from necessity. Where there is no absolute necessity, the rule does not apply, and can not be invoked. Then, too, it is the reverse of this case. There the case is from necessity taken to San Juan; here, from no necessity, the grand jury is brought to Santa Fe, to try a matter which has a vicinage over which a territorial court has jurisdiction limited to the county. When one considers how jealous the law is of the accused's rights; how technicalities are successfully pleaded against indictments; how, if, in some jurisdictions, the foreman of the grand jury neglects to place his name upon the indictment, or if the names of the witnesses are left off, or the prosecuting attorney fails to sign it, or if the panel is irregularly drawn, though every man were perfectly qualified, or if one man is disqualified, though the twelve who find the indictment are qualified, that in each case the indictments are promptly quashed,—it would seem to be a case of literal exemplification of the scriptural saying of straining at a gnat and swallowing a camel to uphold this law after such rulings. While there is no direct adjudication upon the point in question, yet the uniformity of the laws requiring the grand juries to be drawn from the county or district over which the trial court has jurisdiction, for over five hundred years, under state, territorial, and national governments, both in this country and in England, makes it a moral,

yes, a legal, certainty that under the constitution it is an integral part of a territorial grand jury that it should come from the county or vicinage, and, if it does not, that it is an illegal body. If, however, there could be a doubt upon the position just contended for, illegality of this law would have become manifest when read in the light of the positive inhibition upon territorial legislatures against passing any local or special law in regard to the summoning and impaneling of juries, by the United States congress. See chapter 818, 1st Sess. 49th Cong., p. 170. I take it that summoning and impaneling juries includes all the steps and requirements necessary to obtain a legal jury in the jury box. It includes the numbers and territory from whence drawn, as well as requirements in regard to personal qualifications. It would be absurd to say that, if the method of drawing and personal qualifications were the same in each county, the requirements of this statute would be satisfied though in Santa Fe county eight jurors drawn from Santa Fe city constituted a good jury there, while in San Juan twelve jurors from the whole county were sufficient, and in Taos twelve jurors drawn from the first district would be a good jury. Is this law, as regards the number upon the grand jury, and the territory from which drawn, local and special, or general? It is well to consider its exact terms. First it says (section 4): "In the several counties of the territory where courts are held for the trial of causes arising under the laws of the United States,—that is to say, Santa Fe, San Miguel, Bernalillo, and Dona Ana;" and in the same section it again says: "It being the true meaning and intention of this act to provide for but one grand and petit jury in the counties where causes arising under the laws of the United States are triable,—that is to say, in the counties of Santa Fe, San Miguel, Bernalillo, and Dona Ana," etc.; and section 5 reads as follows: "In

all the counties of this territory, excepting the counties of Santa Fe, San Miguel, Bernalillo, and Dona Ana, the number of grand jurors shall be twelve, and nine of whom may find an indictment; and the number of petit jurors shall be twenty-four.'' By the previous section the number of grand jurors in the four excepted counties shall be twenty-one, any twelve of whom may find an indictment, while the number of petit jurors shall be twenty-four. By section 7 the jurors for both grand and petit juries for the four excepted counties are to be drawn from the bodies of the respective districts. And it must be remembered that these jurors so drawn are also to act as juries for the territorial courts in these counties. By section 8 it is provided that in all counties but those in which causes arising under the laws of the United States are tried the juries are to be drawn from the body of the county. Now, it seems too clear for argument that upon the very face of this law it is manifestly not general, but special and local. Part of it applies to four counties, and no more; while part applies to all the other counties, excepting those four. In no view, generally speaking, has this law a general application to the territory. Part is local to four counties; part is local to ten counties, easily ascertained; and four are excluded.

But the territory contends that there may be classifications of agencies under government, and a law which is applicable generally to that agency or class is general, and not local. This contention is correct, and the only question is, does the law of classification hold in this case? Upon this point the territory plants itself as its only tenable ground. In truth, by taking its position here, it says that if this is not tenable the law must be held local and special, and, therefore, subject to the inhibition of congress. What authorities are cited by the territory to sustain its position? I will endeavor to fairly and honestly consider them.

In passing it may be well to state that all the cases cited upon this proposition are based upon substantially the same character of inhibition as to passing local or special laws in certain specified cases. A leading case upon this point is In re New York El. R'y Co., 70 N. Y. 327. In this case the legislature passed what was known as the "General Rapid Transit Act," which was, by its title, "An act further to provide for the construction and operation of a steam railway or railways in the counties of the state." By its terms it could only apply to certain communities, but those communities were not named or limited by the act. To all intents and purposes it was general. In disposing of the objection that it was a local law the court said: "The act in form offers the same opportunities to all citizens of the state. The fact that some are not able to avail themselves of the opportunities does not impugn the general character of the act." How is it with the law I am considering? Does the act in form offer the same opportunities to all citizens?

Can a law in form or fact be of a general character which says: "If you live in Santa Fe county you have twelve chances against being indicted for murder, but if you go to Taos you only have nine chances; while if you are in Rio Arriba county you can have an accusation against you inquired into by the people among whom you reside, but if you are in Santa Fe county your case must be inquired into by a body drawn from other counties." To the like effect is the case In re Church, 92 N. Y. 1. The court says in this case: "A law relating to particular persons or things as a class was said to be general (in the case above, 70 N. Y. 328), while one relating to particular persons or things of a class was deemed local and private. The act of 1881 relates to a class, and applies to it as such, and not to the selected or particular elements of which it is composed. The class consists of every county in

the state having within its boundaries a city of one hundred thousand inhabitants, and territory beyond the city limits mapped into streets and avenues. How many such counties there are now, or may be in the future, we do not know, and it is not material that we should. Whether many or few, the law operates upon them all alike, and reaches them, not by a separate selection of one or more, but through the general class of which they are individual elements. * * * By its terms it applies equally to every other county which may prove to be within the constituted class." Although cited by the territory, this authority is decisively against it. What classification is there in the law before us? Either it is simply counties, in which case the law is not uniform and general, or it is "those counties in which United States cases are triable." But this classification under the above rule fails, because it does make a separate selection of the elements. Four counties, and four only, can ever be in the classification, and the fact is that there is to-day a United States trial county—Socorro—which by no rule of interpretation can come within this law. On the other hand, as to the other counties, there is no rule of classification at all, and, if there were, it would be fatally defective, because it excluded by name four counties; and if to-morrow this county should lose its position as a county for the trial of United States cases, no power or rule exists to place it in the other class. In the case of Wheeler v. Philadelphia, 77 Pa. St. 338, the court only held that cities may be classified, so that a law applicable to the class is not local. There can be no question as to that proposition. They say: "It permits legislation for classes, but not for persons or things of a class." In the cases of McAunich v. Miss. & Mo. Railroad Co., 20 Iowa, 338, and The Iowa Railroad Co. v. Soper, 39 Iowa, 112, the same idea is sustained. In the latter case, quoting from the former, the court

says: "They [the laws under consideration] are general and uniform in their operation upon all persons in like situation." It is plain that this jury law is not, and never can be. The persons in Socorro are in like situation as Santa Fe, but the law applies to them differently. The holding of the Iowa court is simply for the case in point, and does not fully state the law, as in the New York cases. The law, to be general, contemplates that all persons or things who are now or may in the future, come under its classification will be amenable to its jurisdiction. The case of Welker v. Potter and Wife, 18 Ohio St. 85, simply decides that a law having a uniform operation upon all cities in a certain class is a general law. This in no way sustains the jury law under consideration. The last case cited by the territory is that of People v. Sharp, 107 N. Y. 427, in which the court takes occasion simply to reaffirm its holdings in the two New York cases above cited.

The result, then, of the earnest labors of the counsel of the territory is an utter failure to find one authority which by the most learned ingenuity can in the remotest degree place this law in the category of classification which will justify its being considered as obedient to the express requirements of the congressional enactment. But there are cases which plainly, by their authority, condemn the law in question. In the case of McCarthy v. Com., 2 Atl. Rep. 423 (a Pennsylvania case), the legislature passed a law regulating the affairs of counties the population of which exceeds one hundred thousand and is less than one hundred and fifty thousand. It is noticeable that this is much broader than our jury law, for no county is named. The counties might change in the future, and hence it might well be contended under the authorities above cited that the law was a general law. What does the court say? "But by what process of reasoning is this legislation, which has selected for its operation three

or four counties from all those composing the common-
wealth, to be justified? Is the justification to be found
in the well recognized legislative power of classifica-
tion? We think not. It is admitted that classifica-
tion, even where not specifically recognized by nature,
custom, the laws of trade, or the constitution, must in
certain cases be adopted ex necessitate, as in the case
of cities under the act of May 23, 1874, Wheeler v.
Philadelphia, 77 Pa. St. 338, and Kilgore v. Magee, 85
Pa. St. 401." This law was declared local and special,
and hence unconstitutional. In a New Jersey case
(State v. Inhabitants of Bloomfield, 2 Atl. Rep. 249)
the legislature attempted to legislate for localities by
passing an act which gave a certain place peculiar
privileges under the form of a law, which might apply
to indefinite numbers; but by consulting the fact it
could be ascertained that only one place was intended.
In the discussion of the case the court enunciates the
reason for the rule of classification, which seems to me
applicable here. It says: "It is thus apparent, I
think, that in the judicial mind the distinction neces-
sary to mark a class must be something in the situation
or circumstances of the places embraced by the legis-
lative enactment which would render like powers, if
granted, inappropriate to and unavailable for other
townships. Within this rule of interpretation the law
of 1879 can not be vindicated." Measured by this
lucid and practical reason for classification, this rule of
interpretation, what is there in the situation or circum-
stances of Santa Fe, San Miguel, Bernalillo, and Dona
Ana counties which would render like powers or priv-
ileges inappropriate or unavailable to the other coun-
ties of this territory? As showing almost as a demon-
stration that this law is local and special I cite one
more case as laying down the rule by which to test the
general or special nature of a statute. In State ex rel.
Randolph v. Wood, 7 Atl. Rep. (N. J.) 286, the court

says: "Disclaiming all intent to further define what is a general law, it will serve the present purpose to say that, under these adjudications, a law is to be considered as general when its provisions apply to all objects of legislation distinguished alike by qualities and attributes which necessitate the legislation, or to which the enactment has manifest relation. Such law must embrace all, and exclude none, whose conditions and wants render such legislation equally necessary or appropriate to them as a class."

My conclusion is that the jury law of this territory as to the territorial grand jury is—First, unconstitutional, as attempting to set aside a necessary requisite of the common law jury guaranteed to the people by the fifth amendment to the constitution of the United States; second, that the law in question is clearly local and special, and therefore in contravention of the specific inhibition of the congress of the United States upon the territorial legislatures enacting such laws as to summoning and impaneling jurors.