UNITED STATES v. LONDON.

(District Court, E. D. Oklahoma. April 28, 1909.)

1. CRIMINAL LAW (§ 301*)—PLEAS—WITHDRAWAL—DISCRETION OF COURT.

In a prosecution for conspiracy to defraud the United States, the action of the court in refusing to permit defendant to withdraw his plea of not guilty and file a motion to quash the indictment on the ground that the grand jury was not legally formed was within the discretion of the court.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 687; Dec. Dig. § 301.*]

2. CONSTITUTIONAL LAW (§ 199*)—EX POST FACTO LAW—FORMATION OF GRAND JURY.

Where Mansf. Dig. Ark. § 3991 (Ind. T. Ann. St. 1899, § 2671), which applied to Indian Territory before the statehood of Oklahoma, required a grand jury to be composed of only 16 men, and Rev. St. U. S. § 808 (U. S. Comp. St. 1901, p. 626), provides that a grand jury should consist of not less than 16 nor more than 23 persons, so far as it permits a grand jury to consist of more than 16 persons, which acts upon a charge of crime committed before statehood, is violative of Const. U. S. art. 1, § 9, providing that no ex post facto law shall be passed, and, as to such a charge, a jury of more than 16 men is not a legally constituted grand jury.

[Ed. Note.—For other cases, see Constitutional Law, Dec. Dig. § 199.*]

3. INDICTMENT AND INFORMATION (§ 3*)—NECESSITY OF INDICTMENT—"INFAMOUS CRIME."

Conspiracy to defraud the United States being punishable by imprisonment in the penitentiary is an infamous crime within Const. U. S. Amend. 5, providing that no person shall be held for infamous crime except on a presentment or indictment by a grand jury.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. § 12; Dec. Dig. § 3.*

For other definitions, see Words and Phrases, vol. 4, pp. 3573–3577.]

4. WORDS AND PHRASES—"INDICTMENT."

An "indictment" is a presentation to the proper court, under oath, by a grand jury, duly impaneled, of a charge describing an offense against the law for which the party charged may be punished.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 4, pp. 3551–3555.]

5. GRAND JURY (§ 2*)—IMPANELING—STATUTORY PROVISION.

Rev. St. U. S. § 808 (U. S. Comp. St. 1901, p. 626), governing the impaneling of grand juries in federal courts in Oklahoma, may be followed as to the manner in which the jury is drawn in dealing with a crime committed before statehood, when Mansf. Dig. Ark. § 3991 (Ind. T. Ann. St. 1899, § 2671), was in force, but a grand jury must consist of no more nor less than 16 men, as provided in the latter statute.

[Ed. Note.—For other cases, see Grand Jury, Dec. Dig. § 2.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

6. CRIMINAL LAW (§ 970*)—ARREST OF JUDGMENT—GROUNDS.

An objection to the legality of the organization of a grand jury being a matter of law arising on the record is properly raised by a motion in arrest of judgment.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2448, 2449; Dec. Dig. § 970.*]

Indictment against John London for conspiracy to defraud the United States. Heard on motion for arrest of judgment. Sustained.

J. E. London, for the motion.

District Attorney Gregg, Frank Lee, and Ira D. Oglesby, opposed.

CAMPBELL, District Judge. The defendant, John London, was indicted at the January, 1909, term of this court at Muskogee, together with several others, upon the charge of conspiracy to defraud the United States. The indictment charged that the conspiracy was formed and an overt act committed early in the year 1906. The defendant at the same term was arraigned and entered his plea of not guilty, and at this term of the court the cause was called for trial. Before announcing ready the defendant by counsel filed his motion asking leave to withdraw his plea and file a motion to quash the indictment, setting up the substance of the motion to quash in his motion for leave to withdraw the plea, and also attaching to his motion for leave a copy of the motion to quash. The ground upon which the defendant mainly relied in his motion to quash the indictment was that the indictment was returned by a grand jury at the last term of this court sitting at Muskogee composed of 21 men, when lawfully a grand jury for the purpose of indicting for an offense alleged to have occurred before statehood must be composed of only 16 men, and charging that the grand jury returning the indictment in this case was composed of 21 men, and was not examined, impaneled, and sworn according to the provisions of the law of Arkansas, in force in the Indian Territory at the time of the alleged commission of the crime with which defendants were charged, and that said indictment was returned in violation of the rights of the defendants guaranteed by the Constitution of the United States. The motion for leave to withdraw the plea and file motion to quash was denied by the court, and the defendant went to trial. The jury returned a verdict of guilty. The defendant then filed his motion for new trial, setting up various grounds, most of which had been presented to the court during the trial, fully argued and ruled upon, and, on the hearing of the motion for new trial, counsel for defendant only urged the ground set up in the motion—that the court had erred in refusing to permit the defendant to withdraw his plea and file his motion to quash; that the court's failure to do so was an abuse of discretion. The defendant by counsel also had prepared and by permission of court filed and presented a motion in arrest of judgment, which motion sets up as its main ground the same question sought to be raised in the motion to quash; that is, that as to this defendant, the grand jury composed of 21 men was an illegal grand jury, and that the indictment was there-

fore a nullity. As to the action of the court in refusing to permit defendant to withdraw his plea and file his motion to quash, I am of the opinion that this was a matter entirely within the discretion of the court, and that the refusal to permit the plea to be withdrawn was not an abuse of such discretion. The motion in arrest of judgment, however, presents a much more serious question.

In the year 1906 when it is charged the offense was committed, the Western district of the Indian Territory was presided over by the United States court for the Indian Territory, which court at that time had jurisdiction of such offenses. The impaneling of grand juries in that court was governed by section 3991 of Mansfield's Digest of the Laws of the State of Arkansas (Ind. T. Ann. St. 1899, § 2671) which together with other laws of said state had been prior thereto extended over the Indian Territory. By said section it was provided that a grand jury of 16 persons shall be selected from those designated as grand jurors, but if any shall be absent, incompetent to serve, or excused the deficit shall be made up by taking a sufficient number of competent alternates present in the order in which their names appear upon the list. In November, 1907, under an enabling act theretofore passed by Congress (Act. June 16, 1906, c. 3335, 34 Stat. 267), the state of Oklahoma was admitted into the Union, and by said enabling act was divided into two judicial districts, the Eastern and Western, and United States Circuit and District Courts were by said act established in each of said districts, with all the jurisdiction and powers of United States Circuit and District Courts generally.

By section 14 of the enabling act (34 Stat. 275 [U. S. Comp. St. Supp. 1909, p. 155]) it is provided:

"That all prosecutions for crimes or offenses hereafter committed in either of said judicial districts as hereby constituted shall be cognizable within the district in which committed, and all prosecutions for crimes or offenses committed before the passage of this act in which indictments have not yet been found or proceedings instituted shall be cognizable within the judicial district as hereby constituted in which such crimes or offenses were committed."

With the change to statehood and the establishment of this, the United States District Court for the Eastern District of Oklahoma, section 808 of the Revised Statutes of the United States (U. S. Comp. St. 1901, p. 626), as to the impaneling of grand juries, became effective, providing that a grand jury should consist of not less than 16 nor more than 23 persons. It was under this section of the Revised Statutes that the grand jury which indicted the defendant was organized and impaneled. As the records of the court show, the grand jury returning this indictment consisted of 21 men. At this term of the court, Judge John A. Marshall sitting, in the case of United States v. Charles N. Haskell et al. (see 169 Fed. 449), a motion to quash the indictment was presented, setting up, among others, the ground alleged in this case, to wit, that while the offense charged in that case was alleged to have been committed prior to statehood, when the law provided for the grand jury of 16 men, the defendants in that case were indicted after statehood by a grand jury or 21 men, which, by the way, was the same grand jury which indicted the defendant in this case. After very exhaustive argument by able counsel and

thorough consideration, Judge Marshall sustained the motion to quash, holding that as to the defendants Haskell et al. the law providing for a grand jury of more than 16 men was ex post facto, and that by increasing the number of grand jurors who might consider the charges against them, their rights had been substantially affected, and that decision, so far as it is applicable to this case, will be followed.

The Constitution of the United States (article 1, § 9) provides that no ex post facto law shall be passed. It follows that if, as held by Judge Marshall, the law providing for more than 16 members of the grand jury is ex post facto as to this defendant, then as to him that provision of the law is unconstitutional and a grand jury consisting of more than 16 men would not as to him be a legally constituted grand jury. It is further provided by the fifth amendment to the Constitution of the United States that no person shall be held for a capital or otherwise infamous crime unless on a presentment or indictment by a grand jury, except in certain cases of which this is not one. The crime charged in this case is an infamous crime, because it is one punishable by imprisonment in the penitentiary (Parkinson v. U. S., 121 U. S. 281, 7 Sup. Ct. 896, 30 L. Ed. 959), and therefore the defendant cannot be prosecuted except upon presentment or indictment by a grand jury. Without such indictment the court acquires no jurisdiction. Ex parte Bain, 121 U. S. 1, 7 Sup. Ct. 781, 30 L. Ed. 849. As said in 22 Cyc. 171:

"There can be no conviction or punishment for a crime without a formal and sufficient accusation. In the absence thereof a court acquires no jurisdiction, and if it assumes jurisdiction a trial and conviction are a nullity. The accusation must charge an offense. It must charge the particular offense for which the accused is tried and convicted, and it must be made in the particular form and mode required by law. This is true not only at common law, but also under constitutional and statutory provisions in all jurisdictions."

An indictment is described by the United States Supreme Court as the presentation to the proper court, under oath, by a grand jury duly impaneled, of a charge describing an offense against the law for which the party charged may be punished. Ex parte Bain, 121 U. S. 1, 7 Sup. Ct. 781, 30 L. Ed. 849. In 22 Cyc. 191, it is said:

"It is also necessary, as a general rule, provided objection is properly raised, that the grand jury by which the indictment was found shall have been legally organized and constituted. At common law and generally under the statutes they must consist of the number required by law, neither more nor less."

Under the ruling of Judge Marshall, the defendant in this case was entitled to have the matter first presented to a grand jury of not to exceed 16 men. It is not necessary that it should have been drawn in the identical manner prescribed by the laws of Arkansas in force when the crime charged is alleged to have been committed, as this is simply a matter of procedure, and it may be drawn in accordance with the provisions of section 808 of the Revised Statutes providing for not less than 16 nor more than 23 grand jurors, but the grand jury must not consist of more nor less than 16 men.

In the case of Harding v. State, 22 Ark. 210, the Supreme Court of Arkansas, in passing upon a motion to quash an indictment for the reason that the jury consisted of seventeen men, said:

"Upon a construction of these provisions (the provisions of the statute providing for a grand jury of 16 men), it was held in State v. Hawkins, 5 Eng. [Ark.] 71, that it requires 16 legally constituted men to constitute a grand jury, and though an indictment may be found by the concurrence of not less than 12, yet the panel must consist of 16 lawful men. Adhering to the principle decided in this case, and applying it to that provision of the statute which prohibits the summoning of more than 16 to serve as grand jurors, in connection with those provisions which provide for the selection of that number only, and applying the principle that the requirements of the statute, touching such selection, must be strictly observed, as held in State v. Cantrell, 21 Ark. 127, and Wilburn v. State, 21 Ark. 198, we can but hold that a grand jury consisting of more than 16 persons is prohibited by our peculiar statutory provisions, and that an indictment found by them should be quashed on a plea in abatement. It will not do to say that the accused cannot be injured if the panel consists of more than 16, because while 12 out of 16 might not concur in finding a bill, 12 out of a greater number might do so. We do not feel authorized to disregard the plain provisions of the statute, it being safe to follow the law, but always dangerous to depart from it."

In volume 1 of Bishop's New Criminal Law, § 1021, it is said:

"When the grand jury is organized so imperfectly as not to be a lawful body, there is no valid indictment."

The grand jury in the case at bar was a lawful body in all respects with regard to offenses committed against the laws of the United States within the district, since statehood, but as to offenses committed before statehood it may be very seriously questioned whether, containing as it did more than 16 men, it was a lawful body as to such offenses. In Brannigan v. People, 3 Utah, 488, 24 Pac. 767, it is said:

"The law delights in the life, liberty, and happiness of its subjects, and deems statutes which deprive any one of them of these in a sense odious, and therefore all penal statutes must be construed strictly. * * * No person is to be made subject to them by implication, and all doubts concerning their interpretation are to preponderate in favor of the accused. * * * All indictments must be found and presented by a lawful grand jury."

The defendant now raises the objection to the grand jury by motion in arrest of judgment. This is a matter of law arising on the record, and is therefore properly raised on such motion. United States v. McKnight (D. C.) 112 Fed. 982. After careful consideration it is my opinion that the indictment of the defendant by a grand jury of 21 men instead of 16, the number constituting the grand jury when the offense charged is alleged to have been committed, was more than a mere irregularity which he waived by entering his plea and going to trial. Had the objection not been raised until after judgment and sentence, the result might have been different. That I do not now decide. But having raised it on motion in arrest of judgment, I conclude that the objection is well taken, and the motion will be sustained.