THE STATE v. DAKIN.

1. **Practice:** CONTINUANCE: DILIGENCE. A showing of facts considered which was held sufficient to entitle the defendant in a criminal case to a continuance.

2. ——: ——: COUNTER AFFIDAVITS. It is not competent to contradict the statements of fact in an affidavit for continuance by counter affidavits.

*Appeal from Marshall District Court.*

WEDNESDAY, DECEMBER 3.

THE defendant was indicted, tried, convicted, and sentenced to the penitentiary for life, for the murder of one John K. Stough. He appeals to this court for a reversal of the judgment against him.

*James Allison* and *Henderson & Merriman*, for appellant.

*J. F. McJunkin, Attorney General*, for the State.

ROTHROCK, J.—The indictment was found at the April term, 1878, of the Marshall District Court. The defendant was arraigned, pleaded not guilty, and by agreement the cause was continued to the next term, which occurred in October, 1878. The alleged crime was committed on

the 27th day of March, 1878.    At the October term the defendant filed a motion for a change of the place of trial, grounded upon the alleged prejudice of the inhabitants of Marshall county against him.   The motion also alleged that the inhabitants of the county of Story were so prejudiced against him that he could not have a fair trial in that county. The requisite number of affidavits were filed in support of the motion.    There were counter affidavits filed upon the part of the State.    On the 26th day of October the motion was submitted to the court, and was overruled.

On the 28th day of October the defendant filed a motion for continuance, and in support thereof he filed therewith his affidavit in these words:

"I, John N. Dakin, being sworn, say that I am defendant; that I cannot safely proceed to trial at the present term by reason of the absence of material witnesses; that the names of said witnesses are Joseph Dakin, Harriet Dakin, Edward Dakin and Andrew Dakin; that their present whereabouts are unknown to me; that they resided until very recently in Liberty township, Marshall county, Iowa, and had resided in said township nearly two years, and in said county nearly twenty years; that said Harriet Dakin is wife of said Joseph Dakin, and said Edward and Andrew are their sons, and residing all in one family; that they removed from said Liberty township on or about the 14th day of October, 1878, with the intention, as I am informed and believe, to go to Jewell county, Kan.; that their intention to so remove before the present term of this court was not known to me; that I did not learn or know or have any information of their departure or intention to depart before the present term of this court until the morning of Saturday, Oct. 26, 1878, when I first learned they had gone; that I saw and conversed for a moment with said Joseph a short time before he went away, in the presence of several parties, at the door of the jail in this county, through the wicket; that I had opportunity to do no more than barely speak to him, and told him I would want him as a witness on the trial of the case; he replied that the case would not be tried here and that he would not be needed at the next term of this court; that it was then

my intention, and I believe he knew of it, to apply for a change of venue; that I didn't then know whether my trial would come at this term of the court, and didn't know or expect he intended to leave here immediately and before this court would convene; that I didn't have said witness subpœnaed because I didn't then know whether said cause would be tried at this term of court or when it would be tried, and because I supposed that as they resided in the county I could procure their attendance upon a few hours notice, and because I expected my application for a change of venue would be granted; that I was surprised my application for said change of venue was refused by the court, and that my trial would come on this term, and because of all said matters I didn't have subpœnas issued for said witnesses.

"That I expect to prove by said witnesses, Edward and Andrew, the following facts:   On the evening of the alleged murder of John K. Stough they were at my barn looking for a horse that had formerly been owned by me, and which they expected to find at my barn, and that on their return I accompanied them together to their father's house, a distance of about five miles from my residence, and from the place where the body of John K. Stough was found the next morning; that in company with them I started on horseback—all on horseback—from my barn early in the evening, at or before eight o'clock; that we went out directly to their father's, Joseph Dakin's, house; that I remained there a few minutes for the purpose of seeing if I could purchase a horse from Joseph, and between eight or nine o'clock—nine probably—near nine, I left his house; that when they came to my barn that I was there at the barn and was preparing to go to Joseph Dakin's, getting my horse ready for that purpose, and that my wife was there with me at the time; that I expect to prove said facts by each of said witnesses and do not know of any other witness or witnesses by whom I can prove the same facts, except that I can prove by my wife that I was at the barn when they came, and by Joseph Dakin and his wife that I was at their house.

"That I expect to prove by Joseph Dakin that between the hours of eight and nine o'clock of the evening of the night on

which John K. Stough was killed, I was at his house; that he and his wife had retired to bed before I arrived there; that I called him up and he came out and I conversed with him a few minutes about purchasing a horse from him, and then left, about nine o'clock or before.

"That I expect to prove by said Harriet Dakin that she knew my voice and heard me call, and heard me speaking with her husband, who stood in the door with the door open; that I also stood near the door; that it was about nine P. M.

"That I am advised by counsel said facts are material; that said facts are true, and I do not know of any other witnesses by whom all of said facts can be proved; that this application is not made for delay merely, but that justice may be done; that I expect to be fully able to procure the testimony of said witnesses by their personal attendance or by their depositions in time, etc.; that it has been impossible for me since I learned that they had left the county to procure their depositions, and that I do not know at present where their depositions could be conveniently taken, nor that they could be taken at all before their arrival in Kansas; nor am I certainly advised as to the particular locality where they will go, except that it is understood by their friends that they have gone to Jewell county, Kansas." Signed and verified.

And on the 29th day of October, 1878, defendant filed an additional affidavit in support of said motion for a continuance, stating under oath the following:

"That in addition to the matter stated in my first affidavit I expect, also, to be able to prove by said Andrew and Edward Dakin that as they were approaching my residence on the evening referred to they met deceased (Stough) only a short distance from my residence; that deceased was on foot going in a direction from my residence, and in the direction in which the body was found the next morning; that I did not make the application for a continuance on the second day of the term because it was not then certain that the cause would be tried at this term, and for the reason that I did not then know of the absence, or intention to be absent, of the four witnesses named in my original affidavit; that after the determination

of the motion for a change of venue, on Saturday, the sixth day of the term, I sent for my attorneys to consult with them in reference to the matter of asking for a continuance on account of the absence of said witnesses, and other matters pertaining to my defense, when I learned that H. C. Henderson and James Allison, my attorneys who have had principal charge of my defense, were absent, Mr. Allison procuring affidavits to support the change of venue, and Mr. Henderson in attendance at the U. S. Circuit Court at Des Moines, and Mr. Merriman, my other attorney, who has had very little to do with my defense in this case, was engaged in the trial of a cause in this court, and was unable to give any attention to my case. I had no other attorneys employed in the case, and was unable to procure the preparation of a motion and affidavit for continuance until the day of the date of said motion, and that I caused said application to be made as soon as practicable after I learned that it would be necessary to make the same; that I sent for my attorneys early that morning, and informed Mr. Henderson, who came to the jail to see me, of the absence of said witnesses, and the necessity of making the application for a continuance, and the same was thereafter made as soon as practicable; I therefore ask that this be made a part of my original application, etc."

The district attorney filed objections to the motion for continuance, in which it was urged that said motion did not show that the defendant made any effort to secure the attendance of said witnesses at that term, nor to procure their testimony, and because said motion was not filed until the seventh day of the term, and no sufficient reason shown why it was not filed on the second day thereof.

The motion for continuance was overruled on the 29th day of October, and upon the same day the defendant was put upon trial.

We have copied the affidavit and amended affidavit in full, to the end that the showing of diligence to procure the testimony of the absent witnesses may fully appear. It is necessary that we should also state that the record before us shows that at the April term, 1878, it was directed by the court that

the civil business should occupy the first week of the next term, and that the criminal business should not be taken up until the second week of the term, and that it has been the practice for the court, after the commencement of the term, to assign causes on the docket for particular days, and that on Friday of the first week of the term this cause was assigned and set down for trial on Tuesday of the next week. The practice is for parties to subpœna their witnesses to attend according to the assignment of the causes, unless because of anticipated absence of witnesses, or inability to subpœna them, parties subpœna them at their discretion.

Taking all these circumstances in connection with the affidavit and amendment thereto, we are clearly of the opinion 2. ——; ——: that the motion for continuance should have been sustained. An affidavit for continuance is not traversable—that is, counter-affidavits are not allowed to be filed in contradiction of its statement of facts. *State v. Scott*, 44 Iowa, 93. It is shown that the defendant did not know of the removal of said witnesses until the morning of the 26th of October, which was on Saturday. His application for continuance was filed on Monday, the 28th. We have no doubt the court below overruled the motion because it was thought the defendant should have known of the removal of these witnesses before that time. But it appears that the defendant was not at large upon bail. He was confined in the jail of the county before the removal of the witnesses, and it is to be presumed he remained in confinement awaiting his trial up to the time he made the motion. That the evidence set forth in the application was most material is not denied by the State. It goes to the very merits of the case.

We are thus met at the very threshold of this case with reversible error. We need go no further. Complaint is made of the overruling of the motion for change of the place of trial. Upon the record, as it was when the motion was overruled, there was no error. In the progress of the trial there appears to have been quite an excited state of the public mind, as is always the case in the investigation of such a terrible tragedy. The interest in the case was increased by the sworn

confession of another party; made after the verdict against the defendant, to the effect that he, and not the defendant, was the murderer of Stough. If this motion for change of venue should be renewed upon the cause being remanded, it will be for the court to determine from such a showing as may then be made whether the defendant can have a fair and impartial trial in Marshall county. The other errors complained of we need not discuss. They are such as will not likely occur upon a new trial.

REVERSED.