THE STATE OF IOWA, Appellee, v. H. M. BELVEL, Appellant.

1. **Indictment:** GRAND JURY OF LESS NUMBER THAN REQUIRED BY LAW: WAIVER OF OBJECTION. Where, in a criminal cause, the court has jurisdiction of the person of the defendant and of the offense charged, an indictment found by a grand jury composed of five persons only, in a county where the law requires that such jury shall be composed of seven persons, is not fatally defective, and a failure to object thereto upon such ground, until after a plea of guilty and judgment thereon, will constitute a waiver of such defect. (KINNE, J., dissenting.)

2. **Change of Venue:** DISCRETION OF DISTRICT COURT. The allowance of a change of venue in a criminal cause on the ground of excitement and prejudice on the part of the people of the county is a matter within the jurisdiction of the district court, and a showing on the part of the state, by counter affidavits, to the effect that there was but little discussion in the county in regard to the merits of the case, and that there was neither excitement nor prejudice against the defendant, is sufficient to support its action denying a change.

3. **Continuance:** ABSENCE OF WITNESSES: COUNTER AFFIDAVITS: MOTION TO STRIKE. While a resistance to a motion for a continuance on the ground of the absence of witnesses can not be supported by affidavits to contradict statements contained in the affidavits filed in support of such motion as to what the testimony of the absent witnesses will be, it is competent to show want of diligence to procure the testimony desired. And where a defendant in a criminal cause moved to strike all of the affidavits filed by the state in resistance to a motion for a continuance, portions of which only were objectionable, held, that the motion was properly overruled.

4. ———: ———: DILIGENCE: GOOD FAITH. An application for a continuance on the ground of the absence of witnesses should be overruled where it appears not to have been made in good faith, and that the applicant has not used due diligence to procure the testimony desired.

5. **Libel:** FINE: AMOUNT. A fine of five hundred dollars, in a case of criminal libel, is not excessive, where it appears that the libel was grossly offensive, and that its publication was without any provocation that could be justly urged in mitigation of the punishment imposed.

*Appeal from Taylor District Court.*—HON. H. M. TOWNER, Judge.

MONDAY, OCTOBER 16, 1893.

THE defendant was convicted of the crime of libel. From the judgment, which required him to pay a fine of five hundred dollars and costs, he appeals.—*Affirmed.*

· *John F. Martin, Chas. Thomas, Mark Atkinson, Chas. Mackenzie,* and *Dale & Brown,* for appellant.

*John Y. Stone,* Attorney General, and *Thos. A. Cheshire,* for the State.

ROBINSON, C. J.—The indictment upon which the defendant was convicted was presented by the grand jury of Taylor county on the fifth day of March, 1892. It charges that on or about the eighteenth day of February, 1892, in the county named, the defendant "unlawfully and maliciously, to injure the good name and character of G. L. Finn, and to expose him to public hatred and contempt, and deprive him of public confidence, and to bring him into public scandal and disgrace, did, on the said eighteenth day of February, 1892, write and publish, and cause to be written and published in said county, in the *Southwest Democrat,* a newspaper published in said county, a false, scandalous, malicious, and defamatory libel, in the form of a letter. * * * " The matter alleged to be libelous is set out at length, and the sense in which it was written and published is specified.

On the twenty-seventh day of April, 1892, the defendant filed a demurrer to the indictment, which was overruled. The defendant then petitioned for a change of the place of trial on the ground of excitement and prejudice on the part of the people of Taylor

county. The petition was supported by affidavits, and was overruled. A motion for a continuance was made, based on the absence of certain witnesses. It was supported by affidavits, and was resisted by counter affidavits. A motion of the defendant to strike the counter affidavits from the files on the ground that they are not allowable, was overruled. Some of the persons whose affidavits were used were examined in open court, and the application for a continuance was overruled on the fifth day of May, 1892. Thereupon the defendant entered the plea of guilty, and judgment was rendered as has been stated. On the twenty-sixth day of the same month an appeal was taken to this court. On the eleventh day of April, 1893, the defendant filed in the district court a paper entitled a "motion and petition to vacate judgment," in which he asked that the judgment rendered be vacated, that he have leave to withdraw his plea of guilty, and that the indictment be quashed. The application was based upon the following grounds: *First.* An official bulletin of the superintendent of the federal census, issued on the twenty-first day of July, 1891, showed that the population of Taylor county was more than sixteen thousand inhabitants. *Second.* The law requires that in counties having more than sixteen thousand inhabitants the grand jury shall be composed of seven members, and, for the purpose of selecting them, that twelve jurors shall be drawn. *Third.* The grand jury which returned the indictment in question was composed of but five members, and for the purpose of selecting them but eight jurors were drawn. On the twenty-fifth day of April, 1893, the state and the defendant having been duly represented by attorneys, the motion was overruled. The petition was dismissed, and judgment was rendered against the defendant for costs. Two days later he took an appeal from that judgment. The two appeals are submitted together for the determination of this court.

I.   Section 231 of the Code, as amended by chapter 42 of the Acts of the Twenty-first General Assembly, provides that in counties having more than sixteen thousand inhabitants, the grand jury shall be composed of seven members.   Section 241 of the Code, as amended, provides that when the grand jury is to be composed of seven members, twelve jurors shall be drawn from which to select them.   The population of Taylor county, as shown by the federal census of the year 1890, is sixteen thousand, three hundred and eighty-four, and it is not disputed that the grand jury which presented the indictment in question should have been composed of seven members, and that twelve jurors should have been drawn for it.   See *State v. Braskamp*, 87 Iowa, 588.   The record submitted shows, that it was in fact composed of but five members, and that but eight jurors were drawn for it.   The state contends, however, that, as the defendant failed to make the objections now presented before the judgment on his plea of guilty was rendered, they were waived, and that the first appeal deprived the district court of jurisdiction to determine the motion and petition on their merits.   The defendant contends that the defect goes to the jurisdiction of the district court, and that want of jurisdiction can not be waived, but will be considered at any time when it comes to the knowledge of the court, even though not urged by either party.

That the general rule is as claimed by the defendant, has been settled by numerous decisions.   *City of Lansing v. Chicago, M. & St. P. R'y Co.*, 85 Iowa, 215; *Orcutt v. Hanson*, 71 Iowa, 514, 517; *Cerro Gordo County v. Wright County*, 59 Iowa, 485; *Groves v. Richmond*, 53 Iowa, 570; *St. Joseph Manufacturing Company v. Harrington*, 53 Iowa, 380; *District Township of Viola v. District Township of Audubon*, 45 Iowa, 104; *Walters v. The Mollie Dozier*, 24 Iowa, 192, 199; *Burlington*

1. INDICTMENT: grand jury of less number than required by law: waiver of objection.

*University v. Executors of Stewart*, 12 Iowa, 442; *Dicks v. Hatch*, 10 Iowa, 380, 384. In most of the cases cited it appeared that the trial court did not have jurisdiction of the subject-matter of the action, but that is not true in this case. The district court had jurisdiction of the offense charged in the indictment and of the defendant. The real question we are required to determine is, whether the fact that the grand jury was composed of but five members, and the further fact that but eight jurors were drawn for it, were defects so serious that they could not be waived.

Section 4260 of the Code authorizes a challenge to the panel, before indictment, when the jurors were not appointed, drawn, or summoned as prescribed by law. The defendant was not held to await the action of the grand jury by the order of any committing magistrate, and had no opportunity to object to the grand jury until after the indictment had been presented. But subdivision 5 of section 4337 of the Code provides for a motion to set aside an indictment, and requires that it be sustained when it appears "that the grand jury were not selected, drawn, summoned, impaneled, or sworn as prescribed by law." Section 4339 of the Code provides, that the ground stated shall not be allowed to a defendant who has been held to answer before indictment, thus in effect clearly providing for a waiver of the right of challenge when founded upon any of the defects contemplated by the subdivision quoted. *State v. Gibbs*, 39 Iowa, 318, 319; *State v. Hart*, 29 Iowa, 268, 269. Electors of the state only are qualified to act as jurors. Code, section 227.

But a person held to await the action of the grand jury waives his right to object to an indictment presented against him by a grand jury of which an alien was a member, by failing to challenge the alien before the jury was sworn. *State v. Gibbs*, 39 Iowa, 319. In *State v. Reid*, 20 Iowa, 413, 422, it appeared that the

grand jury had submitted its final report, and been discharged. Afterwards, but during the same term of court, it was again summoned and impaneled, and it then found the indictment on which the defendant was convicted. It was objected that the court had no power thus to organize a grand jury. This court held that it had, and also that the objection was not taken in due time, because not made before a plea to the indictment was entered. It is clear, under the statute and the decisions, that the defendant waived his right to object to the panel because a sufficient number of jurors were not drawn for it.

It is more difficult to determine what effect should be given to the acts of a grand jury composed of but five jurors when seven are required by law. Section 11 of article 1 of the Constitution of this state provides, that no person shall be held to answer for any criminal offense higher than those in which the punishment does not exceed a fine of one hundred dollars or imprisonment for thirty days, "unless on presentment or indictment by a grand jury.  *  *  *" Section 15 of article 5 of the Constitution adopted in the year 1884 is as follows: "The grand jury may consist of any number of members not less than five, nor more than fifteen, as the general assembly may by law provide, or the general assembly may provide for holding persons to answer for any criminal offense without the intervention of the grand jury." Acting under that section, the general assembly amended section 231 of the Code, and provided that in counties having more than sixteen thousand inhabitants "the grand jury shall be composed of seven members." ·

The defendant contends that this provision is mandatory, and that his right to have his case considered by a grand jury of seven members is guaranteed by the constitution. It is true that the right is guaranteed as claimed, but the obligation to provide a grand jury of

seven members in certain cases is no greater than is that to furnish a trial jury of twelve. The constitution provides that the "right of trial by jury shall remain inviolate." Section 9, article 1. That means a jury of twelve persons; and the general assembly can not require the parties to an action to accept a jury containing a smaller number, excepting in inferior courts. *Eshelman v. Chi., R. I. & P. R'y Co.*, 67 Iowa, 296; *Kelsh v. Town of Dyersville*, 68 Iowa, 137. It was said in *Cowles v. Buckman*, 6 Iowa, 160, 162, that a party may waive his right to a trial by jury of twelve persons, and consent to a trial by one containing a less number. See, also, *State v. Groome*, 10 Iowa, 308, 315. And in civil actions he may wholly waive a jury. Code, section 2814. In *Wilkins v. Treynor*, 14 Iowa, 391, 393, it was said that "the right of trial by jury, guaranteed by the constitution, may be lost or waived by the act or covenant of a party. This right is not an attribute, or inalienable in its nature and character, but rather a privilege that may be waived or forfeited." It was, therefore, held that a party in default, who nevertheless had the right to appear in the case, had lost his right to demand a trial by jury. See, also, *Clute v. Hazleton*, 51 Iowa, 355, 359; *Henry Buggy Co. v. Patt*, 73 Iowa, 485, 489; *In re Hooker*, 75 Iowa, 377, 380. A jury may be waived by failing to demand it at the proper time. *Davidson v. Wright*, 46 Iowa, 383. See, also, *Hawkins v. Rice*, 40 Iowa, 435, 437. It was held by a majority of this court in *State v. Carman*, 63 Iowa, 130, that a defendant in a criminal action triable on indictment can not waive a trial by jury; and that decision was followed in *State v. Larrigan*, 66 Iowa, 426. But in *State v. Kaufman*, 51 Iowa, 578, it was said to be the settled doctrine of this state, that a defendant in a criminal action may waive a statute enacted for his benefit, and it was held to be competent for him to consent to a trial by eleven jurors. The case of *State*

*v. Ostrander*, 18 Iowa, 435, 438, was decided under a statute which fixed the number of persons required to constitute a grand jury at fifteen, and required the concurrence of twelve to find an indictment. The defendant, before pleading, had filed a motion to quash the indictment, because found by a grand jury consisting of only fourteen members. It appears that a challenge to one member of the panel had been sustained, and that but fourteen members had acted upon the indictment. It was held that the indictment was good. The court made prominent the fact, that, although more than twelve persons were required to constitute a grand jury, yet "from the earliest authorities down it is shown that a presentment by twelve is good, although no more than twelve be impaneled, or, if more are impaneled, although all the other jurors dissent." See, also, *State v. Shelton*, 64 Iowa, 333, 335. The case of *Norris' House v. State*, 3 G. Greene, 513, 514, in which this court held an indictment presented by a grand jury of fourteen members, one having been discharged, to be illegal, was referred to, and apparently doubted, although it was not overruled. In that case objection was made to the indictment by answer. It had been urged that it was made too late, because not made before the grand jury was sworn, under a statute which provided that no objection could be interposed by a defendant to a grand jury for any cause of challenge after they were sworn. In commenting upon that provision, this court said, that it must be confined to such defendants as had an opportunity to interpose the objection therein allowed, but that persons who had been held to await the action of the grand jury, by failing to make their objection before it was sworn, would be "forever barred from objecting afterward." In *People v. Petrea*, 92 N. Y. 128, 143, it was held that no constitutional right of the defendant was invaded by holding him to answer to an

indictment presented by a grand jury not selected in pursuance of a valid law, but selected under color of law and semblance of legal authority. It was said that "an indictment was found by a body drawn, summoned, and sworn as a grand jury, before a competent court, and composed of good and lawful men. This, we think, fulfilled the constitutional guaranty." In *State v. Felter*, 25 Iowa, 67, 71, it was said that "courts do not favor objections based upon irregularities respecting preliminary matters and proceedings, while they will sedulously guard all rights secured to the accused while undergoing the ordeal of a trial which is to be decisive of issues momentous and weighty alike to the defendant and to the state."

Section 231 of the Code, as amended, provides, that the grand jury, in counties having a population not exceeding sixteen thousand, shall be composed of five members, and that in counties having a greater population it shall be composed of seven members. Section 241 provides, that when the grand jury is to be composed of five members only, eight jurors shall be drawn for it, and that when it is to be composed of seven members the number of jurors drawn shall be twelve. Section 4291 provides, that an indictment can not be found without the concurrence of four grand jurors when the grand jury is composed of five members, and not without the concurrence of five grand jurors when it is composed of seven members. When it is required to consist of five members, and a challenge to one has been sustained, a valid indictment may be presented by the remaining four. *State v. Billings*, 77 Iowa, 417, 421. In this case the indictment was presented by a grand jury which would have fully met the requirements of the law, had the population of the county been four hundred less. It was presented by five jurors acting as the grand jury, or by as many members as would have been required in

any event to concur in the finding of the indictment. No constitutional guaranty was violated by impaneling a grand jury of five persons. The defendant could have interposed the objections he now urges before pleading to the indictment, and no reason for his failure to do so is shown. We are of the opinion that, under these circumstances, the indictment can not be regarded as void, and that the defects of which the defendant now complains were waived by a failure to take advantage of them before pleading to the indictment. The court had jurisdiction of the case, and the defendant had an opportunity to make defense on the merits to the charge against him.

II. Complaint is made of the refusal of the district court to change the place of trial on the application of the defendant. It is erroneously stated in argument that no affidavits were filed on the part of the state denying the existence of the prejudice alleged. There was a showing to the effect that there was but little discussion in Taylor county in regard to the merits of the case, and that there was neither prejudice nor excitement against the defendant, and nothing to prevent him from having a fair trial in the county. Applications of the nature of that under consideration are to be decided by the trial court, in the exercise of a sound discretion. Code, section 4374. We think the action of the court in denying the change asked is fully supported by the counter showing made by the state.

2. CHANGE of venue: discretion of district court.

III. It is said the court erred in not sustaining the motion of the defendant to strike from the files the affidavits filed by the state in resistance of the application for a continuance. Affidavits can not be used to contradict statements contained in affidavits filed in support of an application for a continuance as to what the testimony of the absent witnesses will be. *State v.*

3. CONTINUANCE: absence of witnesses: counter affidavits: motion to strike.

*Dakin*, 52 Iowa, 395. But counter affidavits for other purposes, as to show want of diligence to procure the testimony desired, are permissible. *State v. Murdy*, 81 Iowa, 603, 605; *State v. Rainsbarger*, 74 Iowa, 196, 199. Portions of some of the affidavits sought to be stricken out were objectionable, but there was no attempt to designate those portions. The motion was based upon the theory that counter affidavits were not permissible for any purpose. Each of the affidavits at which the motion was aimed contained something which it was proper to urge against the application, and the motion was, therefore, rightfully overruled.

IV. We are also of the opinion that the action of the district court in overruling the motion for a con-

4. ——: ——: diligence: good faith.

tinuance is fully justified by the record presented. The motion was based on the absence of certain witnesses, whose testimony was alleged to be material for the defendant. Counter affidavits showed in regard to one of those witnesses that the defendant not only did not attempt to secure her attendance in good faith, but that by himself and his attorney he made extraordinary and unjustifiable attempts to prevent it after she had been required to appear by the state. She was present at court before the continuance was denied, and the defendant then relied upon the absence of six witnesses, whose names are given, as ground for a continuance. It appears that the defendant and others were examined in open court in regard to the diligence used to obtain the attendance or testimony of those witnesses. That examination and the affidavits filed disclosed facts which justified the court in concluding that the application for a continuance was not made in good faith, and that the defendant had not used due diligence to procure the testimony which he claimed to need. Therefore there was no sufficient reason shown for granting the application.

V.   It is said that the fine imposed is excessive.
The libel was grossly offensive, and, so far as the
5. LIBEL: fine:      record shows, was without any provoca-
   amount.          tion which can justly be urged in mitiga-
tion of the punishment. We can not say that the
amount of the fine exceeds the demands of justice.
We have examined the entire record with care, but
without finding any ground for interfering with either
of the judgments of the district court. They are,
therefore, AFFIRMED.

KINNE, J. (dissenting).—I concur in the opinion of
the majority of the court, except as to the holding that
the indictment was not void, and that the defendant
has waived his right to object thereto. As to these
conclusions I dissent. I am not unmindful that it is
the policy of our law, as is evidenced by statute and the
decisions of this court, to require that mere irregulari-
ties and informalities touching the manner of impanel-
ing the grand jury and the like must be taken advantage
of before pleading to the indictment. I can not agree,
however, that the original organization of a grand jury,
composed of a less number of persons than the consti-
tution and laws require, is such an irregularity as is
contemplated, or as may be waived by any act of the
defendant. It is conceded that in this case the grand
jury which found the indictment was composed, when
it was impaneled, of but five persons, whereas in the
county of Taylor it required seven persons to constitute
a legal grand jury. It will be observed that this is not
a case where the grand jury was, in the first instance,
made up of the legal number, and afterwards reduced
by challenge or otherwise. A grand jury originally
composed of a less number of persons than is provided
by the constitution and laws is in fact not a grand jury
at all. Such a body possesses no more power than any
other five men who should assume to act as a grand
jury. Nor can it be said that the fact that they are

impaneled by the lawfully constituted authorities will validate their illegal organization. The jurisdiction of the trial court is obtained only by virtue of an indictment found and returned by a grand jury. If, then, there is a fatal defect in the organization of the body which must find the indictment, it renders void all subsequent proceedings. It is not a mere irregularity which can be cured or waived, but an essential matter which avoids an indictment found by the body thus illegally constituted.

This question has never been decided in this state. It is an important one. If the doctrine of the majority opinion is to prevail, what is to prevent the finding of an indictment, under color of law, by any body of men greater or less than is provided for by our constitution and laws, and the trial of a defendant thereon in case he fails to make timely objection thereto? Thus may the absolute guaranty of the constitution and the protection which the law affords to the citizen charged with crime be abrogated and annulled because of a failure of the defendant to insist upon his legal rights. Such a doctrine carries the law of waiver, as applied to persons on trial for a crime, to an unwarranted extent. The statutes of Florida require that fifteen persons shall be drawn to serve as grand jurors. In *Gladden v. State*, 12 Fla. 566, it appeared that only fourteen persons were thus drawn. No error was assigned by the plaintiff. The court said: "From a careful inspection of the first page of the record we find only fourteen persons were drawn to serve as grand jurors during the term at which the indictment was found. The statute regulating the organization of grand juries can not, by any known rule of construction, be held to authorize this; and, while no such error is assigned by the plaintiff, yet it is apparent upon the record, and, this being a capital crime, the court can not pass it by without notice. No man should be tried for a capital crime upon an indict-

ment of this character." It was held that there must
be fifteen grand jurors on the panel as originally drawn,
and that the error vitiated all the subsequent proceed-
ings in the case. In *Brannigan v. People*, 3 Utah, 489,
24 Pac. Rep. 767, it was held that, where a grand jury
of seventeen men was impaneled, and the statute
required that the grand jury should consist of "twenty-
four eligible men to serve as grand jurors," and that
"said twenty-four men shall constitute a grand jury,"
an indictment returned by a grand jury organized with
seventeen members was void. It was also held that it
was not too late after the verdict to look into the
record, when the indictment by which the prisoner was
charged was found by an unlawful grand jury. In
*Finley v. State*, 61 Ala. 201, 205, it is said: "But if
its records affirmatively disclose that a body of men
has been organized as a grand jury, in violation of the
statutes which prescribe the mode of organizing such a
jury, clothed with the powers of making presentments
which operate as criminal accusations against the
citizen, all the acts of that body must be pronounced
void; no solicitation or laches on the part of the accused
can cure the illegality. It would be ground of motion
in arrest of judgment, and, if no such motion is made,
of assignment of error in an appellate tribunal; and, if
not assigned, it is of that class of errors this court must
notice in obedience to the statute, and 'render such
judgment on the record as the law demands.'" As the
indictment proceeded from and was the act of a body
of men organized as a grand jury in violation of law,
the judgment of conviction was reversed. In *Lott v.
State*, 18 Tex. App. 627, an indictment for burglary
found by a grand jury composed of thirteen, instead of
twelve, persons was held by the lower court not such
an error as could be taken advantage of by a motion in
arrest of judgment. The court of appeals, while hold-
ing that the ground of the motion was one not provided

by the statute, said: "This exclusion of other grounds could not, however, extend to the extent of depriving the defendant of a constitutional right, nor to the extent of conferring jurisdiction inhibited by the constitution. * * * If he is tried in a court having no jurisdiction, he may interpose this objection to the proceeding at any stage thereof, and in any form. * * * Our conclusion is that the matter presented by the motion in arrest of judgment is fundamental, and reaches to the very foundation of the prosecution. It shows that the court in which this trial and conviction were had was without any jurisdiction of the case. * *. * Such being the case, it matters not in what manner, or at what stage of the proceedings, this want of jurisdiction is presented. If presented for the first time on this appeal, it would be held fatal to the conviction; or, if it affirmatively appeared from the record that the defendant had been convicted of a felony without being indicted therefor by a grand jury, we would set aside the conviction and dismiss the prosecution for want of jurisdiction in the trial court, although the defendant had not, in any manner, made the objection."

It is not profitable to pursue this inquiry further. The importance of the question presented seemed to justify, on my part, a brief statement of the grounds of my dissent. I am of the opinion that the failure to impanel a legal grand jury was an error fatal to the jurisdiction of the trial court, and that it was an error of a grave character, and as to a matter absolutely essential to jurisdiction, and hence could not be waived by any act, or failure to act, on the part of the defendant. In as much as the jurisdiction of the trial court can only be based upon an indictment found by a grand jury legally organized, and as the indictment in this case was not found by such a body, no conviction can be based thereon; and the question of the court's jurisdiction in such a case can be raised at any time, and in any man-

ner; and when such want of jurisdiction appears, no matter how, it is fatal. For the reasons given, the judgment below should be reversed.