## UNITED STATES v. McKNIGHT.

(District Court, W. D. Kentucky. January 16, 1902.)

1. CRIMINAL LAW—ARRAIGNMENT AND PLEA—NEW TRIAL.
    There having been a prior arraignment and plea, one is not necessary on a new trial.

2. SAME—MOTION IN ARREST OF JUDGMENT.
    Motion in arrest of judgment must be based on something appearing on the face of the record.

3. SAME—NEW TRIAL—RELIGIOUS SCRUPLES OF JUROR.
    New trial will not be granted because, over request of juror to be excused for Saturday because of religious scruples as to such day, the district attorney concluded his argument, and the court gave its charge on that day, and at the request of such juror the case was not considered by the jury till after sundown of that day.

R. D. Hill, U. S. Dist. Atty.

W. C. P. Breckinridge, W. O. Bradley, and Richards & Ronald, for defendant.

EVANS, District Judge. This is a prosecution under section 5209, Rev. St., against the president of a national bank for embezzlement. For the third time it has been passed upon by a jury, and for the third time a verdict of guilty has been returned, without much, if any, hesitation. At the trial, which was concluded on the 11th inst., the most careful attention was given by the court to every phase of the case. The accused, by his counsel, has now moved the court to arrest its judgment upon the verdict of the jury, and he has also moved for a new trial of the case. He bases

these motions upon numerous grounds, which are practically similar, and may be conveniently considered and disposed of together, although some of the grounds urged in arrest of the judgment are obviously more applicable to the motion for a new trial. Several affidavits were filed in support of the defendant's motions, and the district attorney, in behalf of the United States and by way of rebutting testimony, has filed copies of certain orders which appear from the records to have been heretofore made in the case. The court has very carefully considered all the questions thus raised, and, without going into details, will state its conclusions upon them.

The motion in arrest of judgment must ordinarily, if not uniformly, be based upon some matter of law arising· upon the record, and which of itself shows that a judgment could not be supported. The court is of opinion that the two counts in the indictment upon which the accused was tried and convicted were abundantly sufficient in law to support the verdict of guilty. If this is not apparent on the face of those counts, as I think it is, then the questions must be regarded as settled by the action of the circuit court of appeals upon them. And it might be conceded to be quite true that if the record on its face did not show that an arraignment of the accused had taken place, and especially if it did not affirmatively show that he had pleaded to the indictment, then no issue had ever been formed for a jury to try, and the court should regard all that has been done at the latest trial as a mere nullity. Crain v. U. S., 162 U. S. 637, 16 Sup. Ct. 952, 40 L. Ed. 1097. I have thus conceded conditionally the necessity for a formal arraignment in all criminal cases, misdemeanors as well as felonies; but I am more than doubtful, under the authorities, whether an arraignment, in form, is ever necessary in misdemeanor cases. The almost, if not quite, uniform practice of the courts in Kentucky, at least, is not to require a formal arraignment in misdemeanor cases, and certainly the uniform practice in this court has always been not to require it in such cases. The charges against the accused in this indictment are made misdemeanors by the express provisions of section 5209 of the Revised Statutes of the United States. The arraignment of the person accused of a public offense is nothing more or less than calling him to the bar of the court, and demanding of him, after explanation of the indictment, whether he pleads guilty or not guilty. Bouv. Law Dict. This, in the nature of things, precedes the entering of any plea by the accused person. The purpose of the arraignment is to obtain from the accused his answer—in other words, his plea—to the indictment. Such being the object of the arraignment, if the accused voluntarily makes his plea or answer without the formality of a demand upon him to know what it is, and if the court accepts this plea as sufficient to form·the issue between the government and the accused, and puts that plea of record, it is manifestly sufficient to subserve the purpose of justice. The whole object of the arraignment has been accomplished. 1 Bish. Cr. Proc. §§ 728, 733. Indeed, in view of what has just been said, it is perfectly correct to say as to misdemeanor cases, at least, that the entering of a plea of not guilty necessarily presupposes an arraign-

ment in fact or a waiver of it. The learned counsel in support of their motions have filed affidavits of their own as well as one from the accused, stating that no arraignment of the accused took place at the recent trial, and that no plea was then made or entered by him. All of these affiants were industriously careful to say that nothing of either kind took place then, but they were all equally careful not to say that nothing of the kind had taken place theretofore. The record shows that on the 15th day of October, 1900, the accused was arraigned in due form, and thereupon pleaded not guilty. A record of these transactions was made in the usual form, as appears from the entry then made, a copy of which was considered on the hearing of the motions.

Such being the facts, the court, upon the authorities and upon the plain and manifest reason of the case, is clearly of opinion that the arraignment then made was abundantly sufficient, even if such a proceeding were necessary in case of a misdemeanor at all, and the court is equally clear in its opinion that the plea then thus entered properly and sufficiently formed the issue in the case for a jury to try thereafter, whenever one was necessary. The plea thus entered formed an issue which could not be altered until the accused himself manifested a desire to change it to some other plea. No such desire was manifested in this case, but, on the contrary, with the record standing thus, the defendant, in the discharge of his recognizance, appeared both by counsel and in person, when the case was called on the 8th inst. The court is of opinion, upon the authorities, that it was wholly unnecessary at this term to repeat the arraignment of the accused or the entry of the plea of not guilty. Both the arraignment and the plea were fixed in the record as parts thereof, and formed an issue to be tried whenever the court, in the progress of its business, properly reached the case on its docket. Neither a mistrial nor a new trial made it at all important to do over the work of forming the issue by re-entering the plea of not guilty any more than it would be necessary in a civil action to renew at each succeeding term the answer of the defendant, which might, in such a case, make up an issue to be tried by a jury. In 1 Bish. Cr. Proc. § 730, it is said: "After not guilty is pleaded, should a trial on this issue be abortive, or for any reason a new trial be ordered, no repetition of the arraignment or plea will be necessary." The author, in support of this obvious proposition, cites the cases of Byrd v. State, 1 How. (Miss.) 247, and Hayes v. State, 58 Ga. 35. And it is stated on page 771, 2 Enc. Pl. & Prac., that "if, on the first trial of a cause, a plea has been entered, it is unnecessary that such plea be again entered on the second trial." Authorities to support the proposition are cited. See, also, Gardes v. U. S., 30 C. C. A. 596, 87 Fed. 172.

In addition, it may be stated as matter of fact that at the trial both counts of the indictment were read at length to the jury by the district attorney in the presence of the accused in his opening statement of the case; that the defendant testified in person; that his counsel argued the cause to the jury for 2 hours and 45 minutes; and that this case, having been on the docket for nearly five years,

has twice been taken to the circuit court of appeals after trials in this court, if, indeed, these matters, or any of them, can be at all important in this connection. They do suggest, however, the idea that after two previous trials and convictions before juries, and after the suing out of two writs of error to the circuit court of appeals, it is rather late for the accused to contend that there has been no arraignment and no plea of not guilty.

It is claimed, though it is not known with how much seriousness, that there ought to be an arrest of the judgment of the court, and also a new trial of the case, because of certain religious scruples entertained by one of the jurors, though it is not very clearly shown how the operation of those scruples prejudiced the accused. It may be observed that no objection to the juror was made by the accused, and that no exception was taken during the trial to anything that occurred respecting him, though it is true that some of the matters were unknown to the accused and his counsel at the time. However, in considering a motion for a new trial, the court would not regard the failure to take exceptions as a sufficient reason for overruling that motion, if the court should see the slightest reason to suppose that any injustice had been done to the accused by the matters mentioned, especially as some things were not fully developed in regard to this juror until after the trial closed.

Upon this subject the court finds the material facts to be as follows: The jury was impaneled and sworn to try the case on Wednesday, the 8th inst.; and the court, deeming it discreet not to permit a separation of the jury, then committed them to the custody of the marshal pending the trial and the determination of the case, and they continued in his custody in the ordinary way until after the verdict was returned. The evidence in the case was concluded early Friday morning, and during the remainder of that day the arguments were all made in behalf of the accused, and the district attorney, in closing for the United States, spoke about an hour, but did not conclude on that day. Before the court convened on Saturday morning one of the jurors, Landrum by name, communicated to the judge his desire to be excused for the day on account of his religious belief that Saturday should be kept as a day of rest. As the jury was already in the custody of the marshal, and under the order of the court could not be separated, and as the case was nearly concluded, and as the jury could not be discharged (inasmuch as the jeopardy of the defendant was complete), the juror was advised that, under these circumstances, his request to be excused for the day could not be granted, and the judge of the court expressed the hope that his scruples, under these unavoidable circumstances, could be salved by the consideration that he was engaged in a work of necessity. Though under some protest, he took his seat with the other members of the jury in the box on Saturday morning, the 11th inst., and remained there until after the district attorney had concluded his argument, and until after the court had delivered its charge, and until the case was finally submitted to the jury, when he, with the other jurors, retired to consider of their verdict. If he did not listen to either the closing

parts of the argument of the district attorney or to the charge of the court, it was not because he was not present nor because he did not have the opportunity to do so. After the occurrence of the facts already stated, and after the submission of the case to the jury about noon on Saturday, and after the jury had retired to consider of their verdict, the juror Landrum caused the fact to be communicated to the judge through the marshal that he could not conscientiously consider the case, under his views of religious duty, until after the going down of the sun that afternoon. The judge then sent word by the marshal that, such being the case, he would advise the jury to respect the scruples of Mr. Landrum, and to wait patiently until the time arrived when that juror could join with the others in considering the case. After this was done, the marshal informed the judge that this juror and all the others were entirely satisfied with that suggestion, and would act upon it, and that that course was particularly agreeable to the juror Landrum. After sundown the case was considered by the jury, and about 8 o'clock their verdict was returned into court. Upon its announcement, the defendant, being present in person and by attorney, moved that the jury be polled, and, upon that being done, the juror Landrum, in clear and unmistakable voice, when his name was called, stated that the verdict upon each count was his.

Upon this state of fact, the court cannot deem it proper to set aside the verdict in the case and grant a new trial. The juror Landrum had been duly sworn. If he did not hear or understand the charge of the court, it was open to him easily to ask for further instruction from the court, and it would have been readily given. As he did not ask for it, it is to be presumed that no aid of that character was desired by him. It seems to the court that it would be setting a most damaging, not to say tempting, precedent, to set aside a verdict because one juror among the twelve might say that on account of some scruple about a collateral matter, and of the honesty of which no one could have cognizance but himself, and about which no one else could be able upon any known test to ascertain whether it was an honest scruple or not, he had not diligently considered the case. The unwisdom of such a precedent might be emphasized where a juror had willfully failed to respect his obligation under his oath to listen to what had occurred at the trial of the case. In no case could it be certain that a juror listened attentively to all that was said, and it would be difficult, upon any intelligent basis, to draw the line upon which to determine when a new trial should be granted or when refused, upon the ground that a juror had not listened or had not heard some part of the testimony or argument or the charge of the court. The precedent such as is sought to be established here, if approved, might, as I have intimated, become quite alluring to persons convicted of crime, and the verdicts of juries might then be set aside with an ease and facility which would greatly please the accused, but which would much impair the value of criminal proceedings. Saturday is not a dies non by any law of the United States nor by any law of Kentucky. It is not made a holiday by any law. Sunday, however, is by common law

dies non, and is a universal holiday in Christian countries. Scruples about working on Sunday are almost universal, and yet it is well-settled law that when a jury is trying a criminal case, and is put in the custody of an officer of the court, it must remain together on Sunday, and if they consider the case on Sunday, while thus in custody, it has never been supposed that that would be an objection to the verdict. Much less can this be the result where Saturday is the day involved. Indeed, the law is also well settled that the jury may return its verdict on Sunday, and if so returned it is perfectly lawful for the court so far to open on Sunday as to receive it. Ball v. U. S., 140 U. S. 131, 11 Sup. Ct. 761, 35 L. Ed. 377; Stone v. U. S., 167 U. S. 195, 17 Sup. Ct. 778, 42 L. Ed. 127. In relation to other days than Sunday, religious scruples, while always to be respected to the largest extent, must yield to the necessity for the operation of certain other exigent considerations of public good. So, in this case, while the court, as far as it could, respected the scruples of this juror, it did not deem it wise to subordinate everything else to those scruples under the almost unavoidable necessities of this case. We might imagine an extreme, but illustrative, case where it would be barely possible to have a jury the religious views or scruples of whose members might distributively relate to every day in the week, and in that way either block a verdict altogether, or else afford multiplied grounds for the setting aside of any that was returned. Viewed from the judicial standpoint, we think the common-sense rule will adjust itself to the idea of having the courts recognize one dies non in the week on account of religion, rather than allow such a day to be chosen by each individual citizen, and especially when this can be done without interfering, except on rare occasions, with the religious observances of any one. The one rule would be rational and applicable to nearly all of the people, while the other might speedily exhaust the calendar, so far as judicial purposes are concerned.

The motion in arrest of judgment, as before stated, must be based upon something appearing upon the face of the record. A judgment upon such a motion is usually in about this form: "For error appearing on the face of the record, it is considered and adjudged by the court that the judgment on the verdict of the jury be, and it is hereby, arrested." See, among other authorities, 2 Enc. Pl. & Prac. 794; 1 Bish. Cr. Prac. § 1282; Rap. Cr. Proc. 379. Tested by this rule, those parts of the motion in arrest of judgment in this case, which relate to the conduct of the juror Landrum, are inapplicable to that motion. They do relate, however, to the motion for a new trial, and are repeated as grounds for that motion, and from that standpoint have been very carefully considered, especially as the motion for a new trial appears to be one the granting of which rests entirely within the discretion of the trial court, and thus throws upon it the greater weight of responsibility. I have been unable, however, to see any ground for a belief that the accused did not have a fair and perfectly impartial trial, although there were some hours' delay before the juror Landrum would begin the consideration of the case. The court, there-

fore, sees no reason of sufficient importance either for arresting the judgment upon the verdict in this case or for granting to the defendant a new trial of the issues formed by his plea entered long ago. Both motions are accordingly overruled, and the court will now pronounce upon the accused the sentence required by the law and by the verdict of the jury.