UNITED STATES v. GERMAN.

(District Court, W. D. Kentucky. April 12, 1902.)

1. CRIMINAL LAW—TRIAL—SUBMITTING QUESTION OF INSANITY AT TIME OF TRIAL.

Where the question whether a defendant in a criminal case was insane at the time of the trial is submitted to the jury for a preliminary finding, a unanimous verdict of insanity is required, to authorize the court to take action thereon.

2. SAME—ARGUMENTS OF COUNSEL.

Where counsel for the accused in a criminal trial comments to the jury, in argument, upon the appearance and conduct of defendant during the trial, for the purpose of supporting a claim that he is insane, counsel for the government is entitled to comment on the same matters in reply.

---

¶ 2. See Criminal Law, vol. 14, Cent. Dig. § 1681.

**8. NATIONAL BANKS—OFFENSES BY OFFICERS OR AGENTS—PROOF OF INTENT.**

In a prosecution, under Rev. St. § 5209, against an officer or clerk of a national bank for embezzlement or the making of false entries, with intent to injure or defraud the bank or to deceive, if the acts charged are proved the intent must be inferred therefrom; and, while such inference or presumption is not conclusive, it throws the burden of proof upon the defendant, and the evidence upon him in rebuttal to do away with that presumption of guilty intent must be sufficiently strong to satisfy the jury, beyond a reasonable doubt, that there was no such guilty intent in the transaction, though, if the use of the words "beyond a reasonable doubt" was technically erroneous, such use was not prejudicial to the case, when the charge is viewed as a whole and in connection with the uncontradicted evidence of the acts which constituted the prima facie case.

Prosecution for Violation of National Banking Law. On motion for new trial.

R. D. Hill, U. S. Atty.

Augustus E. Willson, for defendant.

EVANS, District Judge. The defendant, a clerk in the Third National Bank of Louisville, Ky., was indicted, under section 5209 of the Revised Statutes, for knowingly making many false entries on the books of that bank, with intent thereby to injure and defraud it. He was convicted, and his motion for a new trial is now to be disposed of.

When the case was called for trial at this term the defendant's counsel moved the court for a continuance upon a statement and affidavits which claimed that the defendant was then of unsound mind, whereupon the court, in order to be officially and satisfactorily informed as to whether the motion should be granted, appointed three very competent (not to say eminent) physicians to make a careful and impartial examination of the accused. They did so, and made report that in their opinion he was entirely sane, and, upon considering that report and the affidavits filed by the accused, the motion for a continuance was overruled. When the case was tried, the court, in its charge to the jury, after having admitted all the testimony offered in support of the plea of present insanity, submitted a preliminary question to the jury, viz., was the accused at that time of unsound mind? The court asked the jury, in the event they should be unanimously of opinion that the accused was at that time insane, to report orally to the court, stating that in that event he would advise them as to their future course; it being the intention of the court, though not announced, that, if the accused was found to be then insane, to advise the jury to disagree on the plea of not guilty, so that the case could hereafter be again tried if the mental condition of the accused justified it. The jury were told that, if they did not so agree unanimously, then that they should proceed to consider and determine the case upon the other issues. The accused excepted to the suggestion or requirement of unanimity in this connection, though upon what ground is not quite clear. The obvious ground upon which the court acted was that a verdict or any binding conclusion upon the preliminary question could not be reached by a minority, merely, nor otherwise than by unanimity; and I suppose it

would hardly be insisted that, even if a few of the jury thought that the accused was then insane, their opinion alone could be made binding upon anybody, although, if any one of the jury so thought, he was at liberty not to agree to an ultimate verdict of guilty.

The court recalls no testimony admitted which was incompetent or prejudicial to the defendant. Little of the testimony was seriously objected to, and that part of it which was, appears to the court to afford aid in illustrating some issue in the case. It seems unnecessary to go into details in respect to them. The opinions of witnesses as to the sanity of a human being are admissible evidence, and a layman, as well as a physician, is competent to give one, although the jury will judge as to the value and weight of such opinions, considering them with reference to the experience and capacity of those who give them. Brown v. Com., 14 Bush, 405. While the rule appears to have been ignored, or at least not followed, by the circuit court of appeals for this circuit in the recent case of Robinson v. Railroad Co., 50 C. C. A. 357, 112 Fed. 484, still in the case of Glycerine Co. v. Kizer, 113 Fed. 894, decided a few days later, that court yielded to the well-established doctrine that the competency of witnesses to give opinions is a preliminary question, which the trial court must determine in its discretion, and with the advantage of seeing the witnesses who are produced. That rule was followed in this case, as I suppose it ought to be in every case, and I think the discretion of the court in deciding that the witnesses were qualified to give an opinion was in no way abused. As indicated, however, it was for the jury alone to judge of the value of these opinions.

The charge of the court was prepared with industrious care, and I see no reasonable ground for regarding it as erroneous. Some parts of the comment of the court upon the evidence were objected to by counsel for the accused, but I think all of these matters were clearly submitted to the decision of the jury alone; and they were not only told that they were the sole judges of the weight and credibility of the evidence, but they were told, also, that they were in no way bound by the comments of the court upon the testimony. This seems to conform to an old and hitherto well-established rule in that regard. Indeed, the comments of the court were entirely neutral and colorless, and, in the main, only placed the points argued by counsel upon the one side and the other in antithesis, leaving it to the jury to determine which opposing theory was the correct one. It should not be overlooked that such comments are usually made for that very purpose in the practical workings of a trial.

During the argument the counsel for the accused pointed out to the jury the fact that the accused had during the entire trial sat stolid and still, and had in no way appeared to afford, and had not afforded, counsel any assistance at the trial. In replying the attorney for the United States made some comment upon this argument and upon the facts stated, whereupon the counsel for the accused arose and objected. The court thought that the district attorney had not done more than respond to what the counsel for the accused had in this connection himself voluntarily brought into the argument, and overruled the objection. I adhere to that ruling, and think it was mani-

festly proper, though it might not have been so if the defendant's counsel had not in his argument to the jury and in the first instance himself brought the subject to the attention of the jury. His client, in the presence of the jury, had, with remarkable powers of endurance, sat during the trial for four consecutive days without saying a word, and almost without changing position while the sessions lasted, and this fact was made matter of comment and argument by his own counsel in support of the plea that he was insane. It would be carrying tenderness for persons accused of crimes against the United States to a ridiculous excess, as it seems to me, if the attorney for the United States, under these circumstances, may not at least reply to such an argument of counsel for the person accused, even if he might not be permitted otherwise to allude to the conduct of the defendant occurring in the presence of the jury while the trial was in progress.

The counsel for the accused, in the course of his argument to the jury, also claimed that there was a failure of proof as to the intent charged in the indictment, and argued that there was no proof that the accused was ever benefited by any entry alleged to have been made, and that there was no evidence that he ever got any money from making them. When the district attorney argued to the contrary, and urged that the accused had been able to get many thousands of dollars of the bank's money by means of the entries, the counsel for the accused objected, but the court overruled the objection; expressing the opinion that the argument was legitimate in reply to that of the defendant's counsel, and probably upon the evidence as well. I think counsel for one side in each of these matters had the right to follow counsel on the other in the respects indicated, and that the accused was in no way legally prejudiced thereby.

Section 5209 of the Revised Statutes of the United States is in this language:

"Every president, director, cashier, teller, clerk, or agent of any association who embezzles, abstracts, or willfully misapplies any of the moneys, funds, or credits of the association, or who, without authority from the directors, issues or puts in circulation any of the notes of the association; or who, without such authority, issues or puts forth any certificate of deposit, draws any order or bill of exchange, makes any acceptance, assigns any note, bond, draft, bill of exchange, mortgage, judgment, or decree; or who makes any false entry in any book, report, or statement of the association, with intent, in either case, to injure or defraud the association or any other company, body politic or corporate, or any individual person, or to deceive any officer of the association or any agent appointed to examine the affairs of any such association; and every person who with like intent aids or abets any officer, clerk, or agent in any violation of this section, shall be deemed guilty of a misdemeanor, and shall be imprisoned not less than five years nor more than ten."

Another ground upon which the motion for a new trial is urged is that the court erred in charging the jury upon the subject of the proof of the intent mentioned in that section. After pointing out to the jury that the accused was presumed to be innocent until his guilt was established by the evidence to the exclusion of a reasonable doubt, the court, among many other things, charged the jury that that principle and presumption should be applied separately to each of the 13 counts in the indictment, and said:

"There are six elements necessary to make up each one of the offenses charged, and you should believe that each one of those elements has been established by the evidence to the exclusion of a reasonable doubt before you would be authorized to convict upon any particular count. I also charge you to consider each count, and the evidence applicable thereto, separately from the others."

The jury were told that these elements were:

"First, that the accused at the time of doing the alleged acts was a clerk in the Third National Bank; second, that while acting as such he made on a certain book of the bank the entry described in the count which you may be considering; third, that such entry. meant a certain thing alleged in the count as explanatory thereof; fourth, that, when he made it, it was false; fifth, that the accused well knew it to be false when he made it; and, sixth, that, knowing it to be false, he made the entry with the intent to which I have referred. I repeat that you must believe, before you can convict upon any one of the counts, that each one of these elements necessary to constitute the offense charged in the count has been established by the evidence applicable to that count to the exclusion of a reasonable doubt. If you do not so believe, you should acquit the defendant as to each count as to which you entertain such reasonable doubt."

The court then observed that:

"At this point I may say to you that the burden of proof, speaking generally, is upon the United States; but if you shall believe from the evidence that the accused was a clerk in the said Third National Bank, that he made the entries described in the respective counts of the indictments upon the books of the bank, and that he then knew them to be false, then the burden is upon him to show the absence of an intent thereby to defraud or deceive or injure, to which I have referred."

This outline of one feature of the charge has been given in order to an intelligent presentation of the principal objection to the charge, and which seems to arise upon the use by the court of the following language:

"The court further charges you that the rule of law in regard to intent in this case is this: The intent to defraud or to deceive is to be inferred from willfully and knowingly doing that which is wrongful or illegal, and which, in its necessary consequences and results, must injure or deceive another. The intent may be presumed from the doing of the wrongful or fraudulent or illegal act. But this inference or presumption is not necessarily conclusive. There may be other evidence which may satisfy the jury that there was no such intent, but such inference or presumption throws the burden of proof upon the defendant, and the evidence upon him in rebuttal to do away with that presumption of guilty intent must be sufficiently strong to satisfy you beyond a reasonable doubt that there was no such guilty intent in such transaction. The presumption is that a person intends the natural and probable consequences of acts intentionally done, and that an unlawful act implies an unlawful intent. The law presumes that every man intends the legitimate consequences of his own acts. Wrongful acts knowingly or intentionally committed can neither be justified nor excused on the ground of innocent intent. The intent to injure or defraud is presumed when the unlawful act which results in loss or injury is proved to have been knowingly committed. It is a well-settled rule, which the law applies in both criminal and civil cases, that the intent is presumed and inferred from the result of the action."

This language was read by the court from the opinion of the supreme court of the United States in the case of Agnew v. U. S., 165 U. S., at page 53, 17 Sup. Ct. 240, 41 L. Ed. 624. It had been used by the trial judge in charging the jury in that case, and was criticised as unsound by counsel in arguing the writ of error before the su-

preme court; but that court thought it was correct, and so held, in plain and explicit language, and affirmed the judgment of conviction. That was a case also arising under section 5209 of the Revised Statutes, against a national bank officer, and is exactly in point. No case, therefore, could more perfectly be an authority for another than that is for this. In seeking for light as to the law of this case, and as to the proper construction to be put upon section 5209, I naturally looked for decisions by the supreme court upon the section referred to. I had done this, also, in the somewhat earlier case of U. S. v. McKnight (D. C.) 112 Fed. 982, now under submission in the circuit court of appeals on a writ of error, and where I had also charged the jury in the same way, and where I, of course, laid down the same rule upon the sole, but overwhelming, reason that the highest judicial tribunal in the land had approved its correctness. The court upon that question was therefore upon safe and reliable ground, if any can be found in the trial of criminal cases. Besides, the rule thus established is manifestly sound law, and based upon sound logic. No credible witness can ever positively and affirmatively testify to the exact intent—the mental purpose—of another, and hence there must always be an inference from acts; and the jury were told that, if the evidence was clear as to acts, they should draw the fair inferences, unless there was evidence to rebut those inferences. The court, in the language used, told the jury that if the evidence showed, to the exclusion of a reasonable doubt, that the accused, while a clerk of the bank, had willfully and knowingly made an intentional false entry on the books of the bank intrusted to him for accurate keeping, then, if there was an innocent reason actuating him in knowingly and intentionally doing such an unlawful act, it was for him to show it, as, in the absence of such showing, or at least of some explanation by him, the jury should draw the logical conclusion that there was an intent to injure or defraud the bank. An entry of that sort was otherwise unimaginable. This rule is founded on manifest common sense,—an element which should not be banished from judicial proceedings. The natural presumption would be that such unlawful acts, if willfully and knowingly done, could not have an innocent intent, but still the accused should have a chance; and in this case he had the liberty, if so choosing, to prove that his case afforded an exception to the general rule. Indeed, when we read the clear, satisfactory and authoritative reasoning upon which the supreme court based its approval of the charge of the trial court in the Agnew Case, no room is left for doubt as to the principle that court meant to establish for the guidance of lower courts, and therefore none as to the accuracy of what was charged in this case, when the charge given is viewed as a whole, and not in detached sentences. The language referred to is found on pages 49, 50, 165 U. S., pages 240, 241, 17 Sup. Ct., and page 624, 41 L. Ed., and is as follows:

"Undoubtedly, in criminal cases, the burden of establishing guilt rests on the prosecution from the beginning to the end of the trial. But when a prima facie case has been made out, as conviction follows unless it be rebutted, the necessity of adducing evidence then devolves on the accused. The circuit court, in this part of the charge, was dealing with the intent to injure and defraud the bank, and rightly instructed the jury that, if they

found certain facts, such intent was necessarily to be inferred therefrom. This was in application of the presumption that a person intends the natural and probable consequences of acts intentionally done, and that an unlawful act implies an unlawful intent. 1 Greenl. Ev. § 18; 3 Greenl. Ev. §§ 13, 14; Jones, Ev. § 23; Bish. Cr. Proc. §§ 1100, 1101, and cases cited. The circuit court, however, told the jury that the presumption of the intent to injure and defraud, if the facts were found as stated, was not conclusive, but, in substance, that its strength was such that it could only be overcome by evidence that created a reasonable doubt of its correctness; in other words, that, as the presumption put the intent beyond reasonable doubt, it must prevail, unless evidence of at least equivalent weight were adduced to the contrary. The question of the particular intent was not treated as a question of law, but as a question to be submitted to the jury; and, conceding that the statement of the court that the evidence to overcome the presumption must be sufficiently strong to satisfy the jury 'beyond a reasonable doubt' was open to objection for want of accuracy, we are unable to perceive that this could have tended to prejudice the defendant, when the charge is considered as a whole."

This last remark of the supreme court would appear to fit this case perfectly. The testimony against German was clear, positive, and, in this connection, entirely uncontradicted; and it would seem to be impossible for him to have been prejudiced by the charge, taken as a whole, unless we are to assume that every utterance of the trial court is prejudicial to an accused person which leaves the jury a chance to convict him of a public offense, even when the proof is obvious. At all events, the great tribunal which passed its judgment upon the Agnew Case has held that such a charge to the jury was not prejudicial; and this court, even if by any possibility it would doubt the accuracy of that judgment, has neither the power nor the disposition to overrule it. The United States was entitled to have this court follow the rule established by the supreme court, and it was accordingly done.

Without going into more detail, it seems to the court that the motion for a new trial should be overruled, and it is so ordered, and the sentence of the court will now be pronounced upon the accused.